UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| AMERICAN PROPERTY LOCATORS, INC., | |
| Plaintiff, | |
| v. | Civil Action No. 24-0379 (TSC) |
| CUSTOMS AND BORDER PROTECTION, | |
| Defendant. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE,
<u>FOR SUMMARY JUDGMENT</u>**

**TABLE OF CONTENTS**

BACKGROUND ................................................................................................................ 2

   I.   CBP Must Inform Business Submitters of FOIA Requests That Seek Their Confidential Business Information.................................................................................................................. 2

   II.   Plaintiff Submitted an Earlier FOIA Request and Paid Review Fees Reflective of the Business Submitter Process............................................................................................................ 4

   III.   Plaintiff Submitted Its FOIA Request, and Defendant Calculated Its Fee Estimate. ........... 6

   IV.   The FOIA Request Was Closed Due to Non-Payment of the $738 Fee. .......................... 10

LEGAL STANDARDS ................................................................................................... 10

ARGUMENT .................................................................................................................. 11

   I.   The Court Reviews CBP's Decision Under the Arbitrary and Capricious Standard. ........ 11

   II.   Regardless as to the Standard of Review, the Business Submitter Process Applies to Plaintiff's FOIA Request.............................................................................................................. 16

CONCLUSION ............................................................................................................... 21

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ........................................................ 11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................ 10

*AT&T Corp. v. FCC*,
   220 F.3d 607 (D.C. Cir. 2000) ........................................ 19, 20

*Auer v. Robbins*,
   519 U.S. 452 (1997) ........................................................ 15

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................ 10

*Bowles v. Seminole Rock & Sand Co.*,
   325 U.S. 410 (1945) ........................................................ 15

*Burke v. Dep't of Just.*,
   432 F. Supp. 251 (D. Kan. 1976) ................................... 13

*Colo. Wild Pub. Lands v. U.S. Forest Serv.*
   Civ. A. No. 21-2802 (CRC), 2023 WL 5846678 (D.D.C. Sept. 11, 2023) ........................... 20

*Ely v. U.S. Postal Serv.*,
   753 F.2d 163 (D.C. Cir. 1985) ...................................... 13

*Eudey v. CIA*,
   478 F. Supp. 1175 (D.D.C. 1979) ................................ 13

*FBI v. Abramson*,
   456 U.S. 615 (1982) ........................................................ 2

*FCC v. WNCN Listeners Guild*,
   450 U.S. 582 (1981) ........................................................ 14

*Ground Saucer Watch, Inc. v. CIA*,
   692 F.2d 770 (D.C. Cir. 1981) ...................................... 11

*Hamal v. Dep't of Homeland Sec.*,
   No. 21-5160, 2023 WL 1156801 (D.C. Cir. Jan. 31, 2023) ................................... 14

*Jarvis v. Comm'r, Soc. Sec. Admin.*,
   310 F. Supp. 3d 73 (D.D.C. Apr. 23, 2018) ................. 11

\*  *Kisor v. Wilkie*,
   139 S. Ct. 2400 (2019) .................................................. 14, 15

*Kisser v. Cisneros*,
    14 F.3d 615 (D.C. Cir. 1994) ............................................................................... 20

*Kong on Imp. & Exp. Co. v. CBP*,
    Civ. A. No. 04-2001, 2005 WL 1458279 (D.D.C. June 20, 2005) ....................... 12

*Larson v. CIA*,
    843 F.2d 1481 (D.C. Cir. 1988) ........................................................................... 13

*Long v. Dep't of Homeland Sec.*,
    113 F. Supp. 3d 100 (D.D.C. 2015) ..................................................................... 12

*Mil. Audit Project v. Casey*,
    656 F.2d 724 (D.C. Cir. 1981) ............................................................................. 11

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins*,
    463 U.S. 29 (1983) .............................................................................................. 14

*Nat'l Treas. Emps. Union v. Griffin*,
    811 F.2d 644 (D.C. Cir. 1987) ............................................................................. 13

*Papasan v. Allain*,
    478 U.S. 265 (1986) ............................................................................................ 11

*Perez v. Mortg. Bankers Ass'n*,
    575 U.S. 92 (2015) .............................................................................................. 18

*Pub. Citizen Health Rsch. Grp. v. FDA*,
    185 F.3d 898 (D.C. Cir. 1999) ............................................................................... 2

*SafeCard Servs., Inc. v. SEC*,
    926 F.2d 1197 (D.C. Cir. 1991) ........................................................................... 11

*Sissel v. Wormuth*,
    77 F.4th 941 (D.C. Cir. 2023) ......................................................................... 14, 19

**Statutes and Legislative Materials**

5 U.S.C. § 552 ........................................................................................... 2, 4, 13, 14

5 U.S.C. § 553 ........................................................................................................ 18

Freedom of Information Reform Act of 1986, Pub. L. No. 99-570, 100 Stat. 3207 .................. 13

**Rules**

Fed. R. Civ. P. 12 ............................................................................................ 1, 10, 11

Fed. R. Civ. P. 56 ............................................................................................ 1, 10, 11

**Regulations and Regulatory Materials**

6 C.F.R. § 5.7 ...................................................................................................... 2, 3

6 C.F.R. § 5.8 ................................................................................................ 3, 13

6 C.F.R. § 5.11 ............................................................. 1, 2, 4, 5, 9, 10, 13, 20

\* 6 C.F.R. § 5.12 ........................ 1, 2, 3, 4, 5, 6, 7, 8, 9, 12, 14, 16, 17, 18, 19

Exec. Order No. 12,600, 52 Fed. Reg. 23,781 (June 23, 1987) ......................... 3

68 Fed. Reg. 4,056 (Jan. 27, 2003) ................................................................. 3

81 Fed. Reg. 83,625 (Nov. 22, 2016) .............................................................. 3

This case concerns the business of recovering uncashed checks and asks the Court to consider a narrow question: whether the Freedom of Information Act ("FOIA") request submitted by Plaintiff American Property Locator, Inc. ("Plaintiff" or "American Property") is subject to a U.S. Customs and Border Protection ("Defendant" or "CBP") regulation pertaining to businesses that submit confidential information to CBP.  The regulation at issue is 6 C.F.R. § 5.12.  To be clear, this case does not ask the Court to opine on the applicability of any claims under FOIA Exemption 4; instead, it concerns merely whether CBP is obligated to notify business submitters of Plaintiff's FOIA request.  Further, this is not a case brought by a business submitter objecting that CBP is failing to provide the requisite notification under 6 C.F.R. § 5.12.  Rather, this litigation is brought by a company, American Property, which objects to CBP informing businesses that Plaintiff has submitted a FOIA request seeking records pertaining to their businesses.

Procedurally, this case is before the Court after Plaintiff refused to pay a $738.00 fee to process its FOIA request.  The basis for Plaintiff's objection, according to the Complaint, is that Plaintiff objects to the propriety of this $738.00 fee, which was assessed pursuant to the Department of Homeland Security's (the "Department") fee regulation, 6 C.F.R. § 5.11.  *See* Compl. (ECF No. 1) ¶¶ 13, 20.

As explained in detail below, CBP calculated that fee by including a miniscule amount of "review" time for time spent obtaining and considering any formal objection to disclosure made by a confidential commercial information submitter.  *See* Def.'s Ltr. (ECF No. 1-7) at 2–3.  It is undisputed that, in a proper case, business submitter time may be included in the calculation of the review fee.  *See* 6 C.F.R. § 5.11(b)(7) ("Review time also includes time spent both obtaining and considering any formal objection to disclosure made by a confidential commercial information submitter under § 5.7 [i.e., the Department-wide business submitter regulation] or § 5.12 [i.e., the

CBP-specific business submitter regulation.]").   It is also undisputed that Plaintiff, which submitted the FOIA request for commercial use, Compl. (ECF No. 1) ¶ 9, must pay for some amount of review time.  *See* 6 C.F.R. § 5.11(c)(3) ("Review fees will be charged to requesters who make commercial use requests.").  What is in dispute is whether the business submitter process should apply to Plaintiff's FOIA request pursuant to 6 C.F.R. § 5.12 and, therefore, be included in the calculation of review time.  Because the business submitter process applies, the Court should grant this motion and enter judgment in Defendant's favor.

## BACKGROUND

I. **CBP Must Inform Business Submitters of FOIA Requests That Seek Their Confidential Business Information.**

In passing the FOIA, Congress recognized that confidential business information may be swept up in government records, and it sought to provide an avenue for businesses to provide their confidential information to the government without fear that it would be disclosed under the FOIA. *See* 5 U.S.C. § 552(b)(4) (exempting "trade secrets and commercial or financial information obtained from a person and privileged or confidential").  "[A]lthough FOIA implements [a] policy of broad disclosure, the Congress also realized 'that legitimate governmental and private interests could be harmed by release of certain types of information and provided nine specific exemptions under which disclosure could be refused[.]'" *Pub. Citizen Health Rsch. Grp. v. FDA*, 185 F.3d 898, 904 (D.C. Cir. 1999) (quoting *FBI v. Abramson*, 456 U.S. 615, 621 (1982)).

To give effect to Exemption 4, a Reagan-era Executive Order required the "head of each Executive department and agency subject to the [FOIA]" to "establish procedures to notify submitters of records containing confidential commercial information . . . when those records are requested under the [FOIA]."  Exec. Order No. 12,600, § 1, 52 Fed. Reg. 23,781, 23,781 (June 23,

1987).  "Such notice requires that an agency use good-faith efforts to advise submitters of confidential commercial information of the procedures established under this Order." *Id.*

In accordance with the Executive Order, and just three days after its formation in the wake of 9/11, the Department adopted a regulation for notifying business submitters of FOIA requests. *See* Freedom of Information Act and Privacy Act Procedures, 68 Fed. Reg. 4,056, 4,060 (Jan. 27, 2003) (then-codified at 6 C.F.R. § 5.8; now 6 C.F.R. § 5.7).   On November 22, 2016, the Department adopted a separate business submitter regulation specific to CBP.  *See* Freedom of Information Act Regulations, 81 Fed. Reg. 83,625, 83,629 (Nov. 22, 2016) ("Section 5.12 applies only to CBP operations and should be read independently from 6 [C.F.R. §] 5.7.").

CBP's business submitter regulation—which is not materially different from the Department's more general business submitter regulation with regard to the subsections most prominently discussed in this brief, *compare* 6 C.F.R. § 5.7(a)(1), (c)(1)(ii), (d)(2), *with id.* § 5.12(a), (b)(1)(ii), (b)(2)(ii), respectively—provides that CBP must apply the business submitter process in two situations: (1) whenever the "business submitter has in good faith designated the information as commercially- or financially-sensitive information"; or (2) whenever "CBP has reason to believe that disclosure of the commercial information could reasonably be expected to cause substantial competitive harm." *Id.* § 5.12(b)(1).  Conversely, the business submitter process does not apply if: (1) "CBP determines that the commercial information will not be disclosed;" (2) "[t]he commercial information has been lawfully published or otherwise made available to the public;" or (3) "[d]isclosure of the information is required by law (other than 5 U.S.C. § 552 [i.e., the FOIA])."  6 C.F.R. § 5.12(b)(2).

When the business submitter process applies, CBP must provide the business submitter with written notice of the FOIA request or FOIA appeal encompassing its confidential information.

*Id.* § 5.12(c)(1).  The purpose of this notice is to provide the business submitter with an opportunity to object, if necessary, and substantiate the basis for its objection.  *Id.*  If the business submitter objects, then CBP will exercise its independent judgment and "consider carefully a business submitter's objections and specific grounds for nondisclosure prior to determining whether to disclose commercial information."  *Id.* § 5.12(d).  If CBP decides to disclose the requested commercial information over the business submitter's objection, then it will provide written notice to the business submitter of CBP's intent to disclose.  *Id.*  That notice must include various details, and disclosure must not occur less than ten days after dissemination of the notice of intent to disclose.  *Id.*  If a FOIA requester files a lawsuit encompassing this commercial information, CBP must also promptly notify the business submitter in writing.  *Id.* § 5.12(e).

The Department's fee regulation confirms that the business submitter process will impact the assessment of fees.  *Id.* § 5.11(b)(7).  Specifically, in connection with "review" fees, CBP will charge for "time spent both obtaining and considering any formal objection to disclosure made by a confidential commercial information submitter under . . . § 5.12."  *Id.*  Review fees are "charged to requestors who make commercial use requests."  *Id.* § 5.11(c)(3).  As the FOIA request at issue here is undisputedly for commercial use, Compl. (ECF No. 1) ¶ 9, Plaintiff must pay review fees regardless as to the business submitter process.  6 C.F.R. § 5.11(c)(3).  The only dispute for present purposes is whether those review fees should include time spent obtaining and considering any formal objection to disclose made by a business submitter.  *See id.* § 5.11(b)(7).

## II.    **Plaintiff Submitted an Earlier FOIA Request and Paid Review Fees Reflective of the** <u>**Business Submitter Process.**</u>

On September 2, 2022, Plaintiff submitted a FOIA request designated CBP-2022-125751. Decl. of Patrick A. Howard ¶ 10 ("Howard Decl.," attached).  That FOIA request was similar to the FOIA request at issue in this litigation.  *Compare* Pl.'s FOIA Request (ECF No. 1-5), *with* Pl.'s

FOIA Request CBP-2022-125751 (Ex. C).  CBP provided a fee estimate for that FOIA request, which included time for the business submitter process.  Howard Decl. ¶ 10.  Plaintiff paid the fee. *Id.*  Accordingly, CBP began notifying business submitters.  *Id.*

In response, CBP received several notifications from companies objecting to disclosure of their confidential information.  For instance, on January 5, 2023, Industries SpA, through outside counsel, "confirm[ed] that Industries SpA does not wish for its confidential information to be released."  Industries SpA Resp. (Ex. D); *see also* Howard Decl. ¶ 12.  On January 6, 2023, Roche Diagnostics, through outside counsel, "confirm[ed] that Roche Diagnostics requests that CBP <u>not</u> notify any third party regarding its confidential business information."  Roche Diagnostic Resp. (Ex. E) (emphasis in original); *see also* Howard Decl. ¶ 13.  On January 10, 2023, Carl Zeiss, Inc. "respectfully request[ed] that CBP does not share our corporate information with the third party requesting our information."  Carl Zeiss, Inc. Resp. (Ex. F); *see also* Howard Decl. ¶ 14.  On January 17, 2023, Bio-Rad Laboratories, Inc. "object[ed] to the request of the third party and to the release of any documentation associated with [its] check," adding that the FOIA request seeks "confidential information" and that its "release would cause substantial harm to our competitive position," including by allowing others to "determine our costs."  Bio-Rad Resp. (Ex. G); *see also* Howard Decl. ¶ 15.

CBP carefully considered these business submitters' objections prior to determining whether to disclose their commercial information in accordance with 6 C.F.R. § 5.12(d).  Howard Decl. ¶ 16.  CBP made an independent assessment regarding the release of the documents and concurred with the objections.  *Id.*  On February 3, 2023, CBP issued its final determination as to CBP-2022-125751, releasing certain material and withholding other material pursuant to the applicable FOIA exemptions.  *Id.* ¶ 17.  Plaintiff did not appeal.  *Id.*

**III.**      **Plaintiff Submitted Its FOIA Request, and Defendant Calculated Its Fee Estimate.**

On September 25, 2023, Plaintiff submitted a separate FOIA request to CBP.  Pl.'s FOIA

Request (ECF No. 1-5) at 2–20; *see also* Compl. (ECF No. 1) ¶ 10.  This more-recent FOIA

request, which is the request described in the Complaint, seeks five categories of records:

> 1.  All records showing or depicting funds from Customs and Border
>     Protection ("CBP") which attempt to return the funds to any person or
>     entity, only for the information described in the attached Exhibit 101(A)
>     and Exhibit 101(B);
>
> 2.  All checks which have been issued by CBP which have been replaced by
>     CBP;
>
> 3.  All checks which have been issued by CBP which remain in their canceled
>     status;
>
> 4.  All records showing or depicting information about canceled checks;
>
> 5.  All records showing or depicting that status of funds of persons or entities
>     in the attached Exhibit 101(A) and Exhibit 101(B).

Pl.'s FOIA Request (ECF No. 1-5) at 3.  Exhibit 101(A) purports to identify forty-nine checks

from approximately forty businesses: (1) Enersys Delaware Inc.; (2) Tesla Inc.; (3) Philips

Electronics North America; (4) Hanon Systems Netherlands Cooper; (5) Reckitt Benckiser LLC;

(6) AbbVie Inc.; (7) PGI Far East Precision Products; (8) Honeywell Safety Products, USA;

(9) Honeywell International Inc.; (10) Zhejiang Shenghuabo Electric Appliance; (11) Lucky Brand

Dungarees LLC; (12) Schnelder Electric USA; (13) Sigma-Aldrich Co. LLC; (14) Graco

Minnesota Inc.; (15) Mahle Behr Dayton L.L.C.; (16) Olean Americas Inc.; (17) CFL Global

Commercial Offshore; (18) Jari Tapani Salonen; (19) Humanscale; (20) Maximum Impact

Limited; (21) Alliance Beverage Distributing Co.; (22) Moet Hennessy USA Inc.; (23) Coach

Services, Inc.; (24) Beijing WKW Automotive Parts Co.; (25) Kaneka North America LLC;

(26) Kelsey-Hayes Co.; (27) Sabic Americas Inc.; (28) Liberty Procurement Co. Inc.; (29) Safran

Electrical & Power Mexico; (30) Asia Mineral Holdings Inc.; (31) Roper Corp.; (32) Ray & Roy

International; (33) Hanon Systems; (34) H-E-B, LP; (35) FedEx Trade Networks Transport & Brokerage, Inc.; (36) Amotech Co. Ltd.; (37) Philips Consumer Lifestyle; (38) Kibar Dis Ticaret A.S.; (39) Aeroenlaces Nacionales SA de CV; and (40) West Pharmaceutical Services Inc. *Id.* at 7–9; *see also id.* at 10–12 (reflecting additional columns of the spreadsheet, meaning that page seven and page ten are read together).

Exhibit 101(B) purports to identify an additional fifty-seven checks from approximately forty-five businesses: (1) Bright Pharma Caps Inc.; (2) TKB Industry Co. LTD; (3) Abb Inc.; (4) Bernard Chaus Inc.; (5) B Developed LLC; (6) BC Tyre Group Limited; (7) Playmobil USA Inc.; (8) Moshay Inc.; (9) McWane Inc.; (10) FedEx Trade Networks Transport & Brokerage, Inc.; (11) Scentbird Inc.; (12) Levi Strauss & Co.; (13) Philips Consumer Lifestyle NA; (14) Surface Source USA Inc.; (15) Clover Garments Inc.; (16) Brunello Cucinelli USA Inc.; (17) Native Canada Footwear Ltd.; (18) Venture International PTE Ltd.; (19) Spectrum Brands, Inc.; (20) United Phosphorus Inc.; (21) Chiripal Poly Films Limited; (22) Hong Kong Hailiang Metal Trading; (23) Qingdao International Trading Ltd.; (24) Thong Thuan Co. Ltd.; (25) Sea Tex International Inc.; (26) Bombardier Mass Transit Corp.; (27) MISR for Industry and Trade Mint; (28) Cytec Engineered Materials Inc.; (29) Rapha Racing Ltd.; (30) Prestige Wine Imports; (31) the Carlstar Group LLC; (32) Ecolab Inc.; (33) International Tire Trading Co. Ltd.; (32) Best Choice Int'l Trade Co. Ltd.; (33) Airtek International Corp.; (34) Randa Accessories Leather Goods; (35) Qingdao Lander Sky Tyre Co. Ltd.; (36) Pacific World Corp.; (37) Solutia Inc.; (37) Soysal Muchevherat Dis Ticaret; (38) ADS – Sebring; (39) Dayco Products; (39) Goodrich Corp.; (40) Celestica LLC; (41) Gulfstream Aerospace Corp.; (42) Air Canada; (43) RDI-USA, Inc.; (44) M/S Auto Clutches; and (45) Sazerac Co., Inc. *Id.* at 13–16; *see also id.* at 17–20 (spreadsheet's

continuation columns).  The timeframe for the request extended from "January 1, 2022 through the time that the agency conducts its search for responsive records."  *Id.*

In the Complaint, Plaintiff identifies itself as a company "that specializes in assisting individuals[1] and organizations in recovering unclaimed and/or uncollected funds and assets belonging to them."  Compl. (ECF No. 1) ¶ 5; *see also id.* ¶ 9 (similar).  Plaintiff acknowledges that its "purpose for requesting the records is for commercial use."  *Id.* ¶ 9.  Plaintiff has been requesting and receiving similar records from Defendant "[f]or over twenty years."  *Id.* ¶ 19.  There is an important distinction, though, between the FOIA request at issue here and some of Plaintiff's other FOIA requests—specifically, Plaintiff has often submitted similar FOIA requests for specific companies that Plaintiff represents.  *See, e.g.*, Howard Decl. ¶¶ 7–8.  When Plaintiff has done so, Plaintiff has included a limited power of attorney or other proof of Plaintiff's ability to request the confidential business information of its clients.  *Id.*; *see also* JVC Americas Power of Att'y (Ex. A); Incipio Techs., Inc. Power of Att'y (Ex. B).

Here, it is undisputed that Plaintiff made the request for commercial use, Compl. (ECF No. 1) ¶ 9, and on October 26, 2023, Defendant emailed Plaintiff an estimated fee assessment letter.  *Id.* ¶ 10; *see also* Def.'s Ltr. (ECF No. 1-7) at 2–3.  The letter confirmed that Defendant would be applying the business submitter process to Plaintiff's FOIA request, consistent with Defendant's processing of Plaintiff's prior FOIA request.  Def.'s Ltr. (ECF No. 1-7) at 2; *see also* Howard Decl. ¶ 10.  It estimated that "[t]he search, review, and business submitter process are estimated to take 18 hours of managerial time, for a total of $738.00."  Def.'s Ltr. (ECF No. 1-7) at 2; *see also* 6 C.F.R. § 5.11(c)(1)(ii) (managerial time is charged at $10.25/15 minutes—i.e.,

---

[1]    As demonstrated in Exhibits 101(A) and 101(B), none of the checks pertains to an individual; they each pertain to companies.  *See* Pl.'s FOIA Request (ECF No. 1-5) at 7–20.

$41/hour; professional staff time is charged at $7.00/15 minutes—i.e., $28/hour); Howard Decl. ¶ 21 (same); Dep't of Homeland Sec., *FOIA Fee Structures and Waivers*, https://www.dhs.gov/foia-fee-structure-and-waivers (last updated Sept. 27, 2023). To calculate the time, Defendant took the number of rows of the spreadsheet (108) and multiplied by ten minutes, roughly approximating (but actually underestimating) the amount of time required to locate, prepare, send, and review the business submitter notifications. *See* Compl. (ECF No. 1) ¶ 10; *see also* Howard Decl. ¶ 35.

On November 13, 2023, Plaintiff submitted an administrative appeal of Defendant's fee determination. Compl. (ECF No. 1) ¶ 14. On December 12, 2023, Defendant sent a final determination letter for Plaintiff's administrative appeal. *Id.* ¶ 16; *see also* Def.'s Final Determination Ltr. (ECF No. 1-10) at 2–7. On administrative appeal, Defendant confirmed that the business submitter process described in 6 C.F.R. § 5.12 applies to Plaintiff's FOIA request. Def.'s Final Determination Ltr. (ECF No. 1-10) at 5–6. Defendant also reviewed the fee calculation and confirmed that Defendant had actually underestimated the charges by including only managerial time and failing to include professional staff time. *Id.* at 6. Defendant explained that the correct fee estimate should have been $865.50 (which would be the sum if professional staff time were included, as required, *see* 6 C.F.R. § 5.11(c)(1)(ii), (c)(3)) and that the $738 estimate was "an undercalculation of $127.50." Def.'s Final Determination Ltr. (ECF No. 1-10) at 6. Defendant nonetheless gave Plaintiff the benefit of its earlier estimate and confirmed that it will not revise upward the fee estimate, thereby allowing Plaintiff to prepay the lower fee estimate. *Id.* Today, Defendant again confirms that it has underestimated, not overestimated, the relevant review time. *See* Howard Decl. ¶ 35 ("I confirm that the fee estimate of $738 underestimates the costs of review time to process this FOIA request.").

The core dispute in this action concerns Defendant's application of the business submitter process to Plaintiff's FOIA request.  Compl. (ECF No. 1) ¶ 20.  Plaintiff argues that Defendant formerly did not apply the business submitter process when calculating the fee, *id.* ¶ 19, and that "businesses do not provide the information contained in the records Plaintiff has requested," with such information instead being "public information obtained from the [Department of the Treasury's] Bureau of Fiscal Services," *id.* ¶ 18.  For the reasons described below, Plaintiff is wrong to contend that the business submitter process is inapplicable to Plaintiff's FOIA request.

## IV.  The FOIA Request Was Closed Due to Non-Payment of the $738 Fee.

Plaintiff had a choice once it received, on December 12, 2023, the administrative appeal decision upholding the assessment of the fee.  *See* Howard Decl. ¶ 36.  At that point, payment of the fee would have caused CBP to process Plaintiff's request.  *See id.*  Yet Plaintiff chose not to pay the $738 fee.  *Id.* ¶ 37.  Instead, on February 8, 2024, Plaintiff filed the Complaint (ECF No. 1).  Defendant now moves to dismiss this case under Federal Rule of Civil Procedure ("Rule") 12(b)(6), or, in the alternative, for summary judgment under Rule 56.

## LEGAL STANDARDS

Under Rule 12(b)(6), the Court may dismiss a Complaint where a plaintiff fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When resolving a motion to dismiss pursuant to Rule 12(b)(6), the pleadings are construed broadly so that all facts pleaded therein are accepted as true, and all inferences are viewed in a light most favorable to the plaintiff.  *See id.*  A court is not required to accept conclusory allegations or unwarranted factual deductions as true.  *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

do not suffice." *Id*. Likewise, a court need not "accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Ultimately, the focus is on the language in the complaint and whether that sets forth sufficient factual allegations to support a plaintiff's claims for relief.

If, in deciding a Rule 12(b)(6) motion, the Court relies on matters outside the pleadings, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Summary judgment is appropriate if the record shows there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

"A FOIA case typically and appropriately is decided on a motion for summary judgment." *Jarvis v. Comm'r, Soc. Sec. Admin.*, 310 F. Supp. 3d 73, 76 (D.D.C. Apr. 23, 2018). The court may award summary judgment solely on the basis of information provided by the agency in a declaration. *See Mil. Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). An agency's declaration must be "'relatively detailed and non-conclusory,'" but it is "accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

## ARGUMENT

## I.    <u>The Court Reviews CBP's Decision Under the Arbitrary and Capricious Standard.</u>

This case stands in an atypical procedural posture. FOIA cases before the Court typically involve FOIA requestors alleging agency delays in processing their requests, inadequate searches, or improper invocation of FOIA exemptions. When FOIA cases do concern fee determinations, they typically concern whether an agency improperly denied a fee waiver request or improperly

refused to classify the FOIA requestor as an educational institution or representative of the news media, which would permit a reduction of fees. *See, e.g.*, *Long v. Dep't of Homeland Sec.*, 113 F. Supp. 3d 100, 103 (D.D.C. 2015) (appropriate category for FOIA requestor). Alternatively, FOIA cases involving fees may feature FOIA requestors who refuse to pay the filing fee but nonetheless attempt to bypass the fee requirement by bringing an action in Court to try to litigate the merits of their FOIA request without paying the fee. *See Kong on Imp. & Exp. Co. v. CBP*, Civ. A. No. 04-2001, 2005 WL 1458279, at *2 (D.D.C. June 20, 2005) (dismissing action because plaintiff "did not exhaust its administrative remedies prior to filing suit"). These are not the issues the Court faces in this action—to the extent Plaintiff interprets its Complaint differently, any claims pertaining to the merits of Plaintiff's FOIA request, which was closed due to Plaintiff's nonpayment of the fee, would fail due to Plaintiff's failure to exhaust. *See Kong*, 2005 WL 1458279, at *2; *see also* Howard Decl. ¶¶ 36–37.

Instead, here there is no dispute that Plaintiff must pay for review time, no dispute that Plaintiff is currently ineligible to litigate the merits of its FOIA request (due to its nonpayment of the assessed fee below), and no dispute as to Plaintiff's status for purposes of calculating fees. There is also no dispute challenging CBP's or the Department's regulations and no dispute that, if the business submitter process applied, then CBP's fee calculation was proper. The sole dispute is whether the business submitter process, as set forth in 6 C.F.R. § 5.12, applies to Plaintiff's FOIA request.

As a preliminary matter then, the Court must determine the correct standard of review for such an action, which turns on the words used in 6 C.F.R. § 5.12 (CBP's business submitter process regulation), not 6 C.F.R. § 5.11 (the Department's fee regulation). If this were a case involving the denial of a fee waiver, an amendment to the FOIA in 1986 would require the Court to review

the fee waiver denial de novo, albeit review would be "limited . . . to the record before the agency." *Larson v. CIA*, 843 F.2d 1481, 1483 (D.C. Cir. 1988) (citing 5 U.S.C. § 552(a)(4)(A)(vii)); *see also* 5 U.S.C. § 552(a)(4)(A)(vii) ("In any action by a requester regarding the waiver of fees under this section, the court shall determine the matter de novo: *Provided*, [t]hat the court's review of the matter shall be limited to the record before the agency."). But this is not a case involving the denial of a fee waiver—indeed, Plaintiff readily admits the FOIA request was submitted "for commercial use," Compl. (ECF No. 1) ¶ 9—and, therefore, 5 U.S.C. § 552(a)(4)(A)(vii) is inapplicable by its terms.

Before Congress amended the FOIA in 1986, all fee determinations under FOIA in this Circuit[2] were "reviewed under the arbitrary and capricious standard." *Larson*, 843 F.2d at 1482; *see also Nat'l Treas. Emps. Union v. Griffin*, 811 F.2d 644, 647 (D.C. Cir. 1987); *Ely v. U.S. Postal Serv.*, 753 F.2d 163, 165 (D.C. Cir. 1985); *Eudey v. CIA*, 478 F. Supp. 1175, 1176 (D.D.C. 1979) ("[G]iven the discretion afforded the agency, the proper standard for judicial review of an agency denial of a fee waiver is whether that decision was arbitrary and capricious."). Congress elected to change the standard of review for fee waiver determinations in 1986. *See Larson*, 843 F.2d at 1482–83 (describing history); *see also* Freedom of Information Reform Act of 1986, Pub. L. No. 99-570, § 1804(b)(1), 100 Stat. 3207, 3250.

Without contrary guidance from Congress, the default standard of review is the arbitrary and capricious standard. *See Sissel v. Wormuth*, 77 F.4th 941, 946 (D.C. Cir. 2023) ("[A] great

---

[2]   At the time, district courts in other circuits were divided on this issue. Some, for instance, held that fee decisions were entirely unreviewable. *See, e.g.*, *Burke v. Dep't of Just.*, 432 F. Supp. 251, 252 (D. Kan. 1976) ("The Freedom of Information Act does not, however, empower a federal court to control the exercise of administrative discretion by directing an agency to waive or reduce the fees authorized by statute in a particular case."). Here, Defendant agrees that the Court may review the fee determination. *See* 6 C.F.R. § 5.8(a)(1) ("A requester may also appeal . . . if the requester believes there is a procedural deficiency (e.g., fees were improperly calculated).").

deal of agency action is discretionary, and the default standard of review still is ordinary arbitrary-and-capricious review."); *FCC v. WNCN Listeners Guild*, 450 U.S. 582, 596 (1981) (noting that the Court "repeatedly emphasized that [an agency's] judgment regarding how the public interest is best served is entitled to substantial judicial deference").  The standard awards reasoned deference to the agency, as the agency is the most intimately involved with details of the matter and possesses the appropriate level of technical expertise.  *See, e.g.*, *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins*, 463 U.S. 29, 43 (1983); *Hamal v. Dep't of Homeland Sec.*, No. 21-5160, 2023 WL 1156801, at *3 (D.C. Cir. Jan. 31, 2023) ("[T]he scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency.") (quoting *State Farm*, 463 U.S. at 43).  Accordingly, as this is not an "action by a requester regarding the waiver of fees under [5 U.S.C. § 552]," 5 U.S.C. § 552(a)(4)(A)(vii), de novo review does not apply.  In the absence of any provision of law requiring de novo review, "the default standard of review still is ordinary arbitrary-and-capricious review."  *Sissel*, 77 F.4th at 946.

But even if the Court determines that de novo review applies, CBP is still entitled to deference as to how it interprets its own business submitter regulation.  Unless the Court finds that this regulation, 6 C.F.R. § 5.12, unambiguously demonstrates that the business submitter process is inapplicable here, then CBP's interpretation of its own regulation is entitled to *Auer* deference.  As the Supreme Court recently confirmed, if an agency's regulation is ambiguous, courts defer to reasonable interpretations by the agency—i.e., interpretations that "come within the zone of ambiguity the court has identified after employing all its interpretive tools."  *Kisor v. Wilkie,* 139 S. Ct. 2400, 2416 (2019).  The Supreme Court "call[s] that practice *Auer* deference, or sometimes *Seminole Rock* deference, after two cases in which [it] employed it."  *Id.* at 2408 (citing *Auer v.*

14

*Robbins*, 519 U.S. 452 (1997); *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410 (1945)).  The

Supreme Court in *Kisor* explained that, where an agency takes an "official position" that "in some

way implicate[s] its substantive expertise," judicial deference is most appropriate.  *Id.* at 2416–17.

"When it applies, *Auer* deference gives an agency significant leeway to say what its own rules

mean."  *Id.* at 2418.

      Here, on or about October 1, 2020, CBP took an official position with respect to this

category of requests, and it contemporaneously informed frequent requestors of these sorts of

requests as to this change.  Howard Decl. ¶ 32.  CBP applies this interpretation uniformly to all

requestors.  *Id.*  Moreover, among this list of frequent requestors that CBP informed was Plaintiff

itself—specifically, CBP emailed Ronnie Braun Leppke, who has been the "President at

[American Property]. . . from 1993 to the present time," Leppke Decl. (ECF No. 1-8) at 39 (¶ 1)—

on September 18, 2020, to inform Plaintiff that the policy would be "changing effective October 1,

2020."  Email to R. Leppke (Ex. H); *see also* Howard Decl. ¶ 32.  As CBP explained, effective

October 1, 2020, "such requests should be submitted to CBP at

REVREFUNDINQUIRY@cbp.dhs.gov and, if applicable, must include proper

authorization/authority (such as Power of Attorney) to do so on behalf of the party due the original

refund."  Email to R. Leppke (Ex. H).

      CBP's interpretation as to whether businesses it works with have interests in records being

requested under FOIA implicates its substantive experience.  *See Kisor*, 139 S. Ct. at 2418.

Accordingly, regardless as to the standard of review, CBP's determination as to whether to inform

businesses of FOIA requests that pertain to them is entitled to *Auer* deference.

## II.     Regardless as to the Standard of Review, the Business Submitter Process Applies to Plaintiff's FOIA Request.

Whether the Court reviews CBP's determination under arbitrary and capricious review (as requested) or de novo review, whether it applies *Auer* deference (as requested) or not, the Court should reach the same conclusion: the business submitter process applies to Plaintiff's FOIA request.  The business submitter process applies if "CBP has reason to believe that disclosure of the commercial information could reasonably be expected to cause substantial competitive harm." 6 C.F.R. § 5.12(b)(1)(ii).  "'[C]ommercial information' is defined as trade secret, commercial, or financial information obtained from a person."  *Id.* § 5.12(a).

Plaintiff's FOIA request seeks "financial information obtained from a person."  *Id.*  Among other items, Plaintiff's request demands "[a]ll records showing or depicting information about canceled checks," and "[a]ll records showing or depicting that status of funds of persons or entities in the [accompanying spreadsheets]."  Pl.'s FOIA Request (ECF No. 1-5) at 3.  The spreadsheets list several dozens of businesses.  *Id.* at 7–9, 13–16.  If a business sends CBP an email inquiring into the status of a canceled check, that email is certainly a record depicting information about a canceled check, and such an email may well include additional financial information about the business, potentially even including bank account information.  Further, as explained in the accompanying declaration, "the request for the status of replacement checks for various payees is financial information provided to CBP upon the original commercial transaction between the business and CBP."  Howard Decl. ¶ 29.  "This information would contain the name of the company (payee), address, payee ID number, check number, amount of replacement check and whether a replacement check was reissued by CBP."  *Id.*  "This is confidential and financial information unique to the specific business, which should be afforded opportunity to review and

comment on the release of its information under FOIA, through the business submitter process." *Id.*

Indeed, CBP even has received objections from specific businesses objecting to the release of this type of information to Plaintiff. *See, e.g.*, *id.* ¶¶ 12–15; Industries SpA Resp. (Ex. D); Roche Diagnostic Resp. (Ex. E); Carl Zeiss, Inc. Resp. (Ex. F); Bio-Rad Resp. (Ex. G) (asserting that this information "is business confidential information, and its release would cause substantial harm to our competitive position," and "[a] competitor or individual could use the confidential banking and CBP required identifiers and documentation to access Bio-Rad accounts or determine our costs"). Thus, Plaintiff's FOIA request seeks "financial information obtained from a person," 6 C.F.R. § 5.12(a), and "CBP has reason to believe that disclosure of the commercial information could reasonably be expected to cause substantial competitive harm," *id.* § 5.12(b)(1)(ii).

To be sure, Plaintiff has a long history of submitting similar FOIA requests (some of which are like the FOIA request at issue here and some of which involve companies that Plaintiff represents and for which Plaintiff provides a power of attorney proving his entitlement to these businesses' confidential information, *see, e.g.*, Howard Decl. ¶¶ 7–9). CBP acknowledges that prior to approximately October 1, 2020, it generally did not notify business submitters of similar stale dated check FOIA requests. *Id.* ¶ 32. CBP reviewed 6 C.F.R. § 5.12 and determined that its regulation required it to notify business submitters of such FOIA requests. *Id.* "Further, now that specific businesses have informed CBP that they believe disclosure of the commercial information requested in these requests could reasonably be expected to cause substantial competitive harm (e.g., Ex. G), CBP now 'has reason to believe that disclosure of the commercial information could reasonably be expected to cause substantial competitive harm,' rendering 6 C.F.R. § 5.12(b)(1)(ii) applicable." *Id.* CBP's determination does not single out Plaintiff, but rather has been uniformly

17

applied across the board to FOIA requestors who submit these types of requests, as well as all FOIA requests for business documents belonging to entities that the requestor does not represent, to the extent that 6 C.F.R. § 5.12 applies.  *Id.*

The mere fact that the agency previously failed to apply the business submitter process to similar FOIA requests and now does apply the process to these FOIA requests is not reason to compel CBP to maintain its prior policy.  *See Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 100–01 (2015).  Just as CBP was not required to submit its prior interpretation of 6 C.F.R. § 5.12 for these sorts of FOIA requests to notice-and-comment, it is not required to submit its reinterpretation to notice-and-comment.  *See id.* at 100 ("[T]he [Administrative Procedure] Act's notice-and-comment requirement 'does not apply . . . to interpretative rules.'") (quoting 5 U.S.C. § 553(b)(A)).  CBP notes, however, that it provided advance notice to Plaintiff of the policy change.  Howard Decl. ¶ 32; *see also* Email to R. Leppke (Ex. H).

In any event, the situation on the ground is indeed different today than it was in the past. In particular, CBP has now received objections from specific businesses objecting to the release of similar material.  *See, e.g.*, Howard Decl. ¶¶ 12–15; Industries SpA Resp. (Ex. D); Roche Diagnostic Resp. (Ex. E); Carl Zeiss, Inc. Resp. (Ex. F); Bio-Rad Response (Ex. G).  CBP further emphasizes that the change in its interpretation of the interplay between 6 C.F.R. § 5.12 and these sorts of FOIA requests is being applied uniformly: "CBP's determination does not single out Plaintiff, but rather has been uniformly applied across the board to FOIA requestors who submit these types of requests[.]"  Howard Decl. ¶ 32.  At the very least, now that CBP has received concrete objections from specific businesses, it now "has reason to believe that disclosure of the commercial information could reasonably be expected to cause substantial competitive harm."

6 C.F.R. § 5.12(b)(1)(ii).  Whether any Exemption 4 claims can be properly substantiated is a separate question that is not at issue in this case.

Plaintiff may argue that, despite CBP having reason to believe that disclosure of the commercial information could reasonably be expected to cause substantial competitive harm, CBP should nevertheless find that the business submitter process is inapplicable pursuant to 6 C.F.R. § 5.12(b)(2)(ii).  That subsection provides that notice to business submitters is not required if "[t]he commercial information has been lawfully published or otherwise made available to the public." *Id.*  Here, however, "it is not the case that all information requested by Plaintiff's FOIA request has been otherwise made available to the public."  Howard Decl. ¶ 30.  "For instance, the fact that a replacement check was or was not requested by the business and reissued by the government is a new transaction not yet publicly available and reveals commercial information both (1) about the business and (2) from the business."  *Id.*  Indeed, Plaintiff appears to recognize that it seeks confidential business information because Plaintiff does submit powers of attorney when it requests the same information for specific companies that it already represents.  *See id.* ¶ 6; *see also* JVC Americas Power of Att'y (Ex. A); Incipio Techs., Inc. Power of Att'y (Ex. B).  Accordingly, no exception in 6 C.F.R. § 5.12(b)(2) would exempt Plaintiff's FOIA request from the business submitter process.

CBP's determination as to the interplay between 6 C.F.R. § 5.12 and Plaintiff's FOIA request is entitled to deference.  *Cf. Sissel*, 77 F.4th at 946.  Especially with CBP now having received objections from specific businesses objecting to the disclosure of this information, CBP's determination that it has reason to believe that the business submitter process applies to these FOIA requests is not arbitrary or capricious.  *See id.* at 947 ("[A]rbitrary-and-capricious review is '[h]ighly deferential' and 'presumes the validity of agency action.'") (quoting *AT&T Corp. v. FCC*,

220 F.3d 607, 616 (D.C. Cir. 2000)); *see also AT&T*, 220 F.3d at 616 ("We 'may reverse only if the agency's decision is not supported by substantial evidence, or the agency has made a clear error in judgment.'") (quoting *Kisser v. Cisneros*, 14 F.3d 615, 619 (D.C. Cir. 1994)).   CBP provided a thorough explanation as to why the business submitter process applies to Plaintiff's FOIA request at the administrative stage, *see* Def.'s Final Determination Ltr. (ECF No. 1-10) at 5–6, which it reiterates again today.  *See generally* Howard Decl.  Regardless of the standard of review, CBP urges that it has demonstrated that the business submitter process applies to Plaintiff's FOIA request.

Defendant emphasizes that all that CBP is doing at this point is providing businesses with an opportunity to know that a company has requested their financial information for commercial use and for the businesses to be afforded a chance to object.  When CBP previously went through this same process for another of Plaintiff's FOIA requests, some businesses objected, and others did not.  *See* Howard Decl. ¶ 11.  CBP then made an independent assessment regarding the release of the documents, withholding certain material.  *See id.* ¶ 16.  Now, however, Plaintiff has decided that CBP should not provide businesses with the mere opportunity to weigh in on such a request. Plaintiff's argument seeks to keep businesses in the dark when Plaintiff requests their financial information.  *But see Colo. Wild Pub. Lands v. U.S. Forest Serv.*, --- F. Supp. 3d ---, Civ. A. No. 21-2802 (CRC), 2023 WL 5846678, at *9 (D.D.C. Sept. 11, 2023) (explaining in a separate context that "the overall logic of FOIA[ ] forbids an agency from opting to keep the public in the dark").  Defendant respectfully submits that the Court should allow it to shine a light on Plaintiff's FOIA request and, accordingly, inform the impacted business submitters.  In accordance with the Department's fee regulation, 6 C.F.R. § 5.11, CBP can charge reasonable fees for this FOIA request that Plaintiff submitted for commercial use: here, $738.00, *see* Howard Decl. ¶ 35.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court dismiss the above-captioned case, or, in the alternative, grant summary judgment in Defendant's favor.

Dated: April 12, 2024
       Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division


By: _____/s/ *Douglas C. Dreier*_____
    DOUGLAS C. DREIER
    D.C. Bar #1020234
    Assistant United States Attorney
    601 D Street, NW
    Washington, DC 20530
    (202) 252-2551

*Attorneys for the United States of America*