UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMERICAN PROPERTY LOCATORS, INC.,

Plaintiff,

v.

CUSTOMS AND BORDER PROTECTION,

Defendant.

Civil Action No. 24-0379 (TSC)

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS OR, IN THE
ALTERNATIVE, FOR SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

ARGUMENT ................................................................................................................. 1

I.   *De Novo* Review Is the Exception, Not the Norm, for Agency Action. ............................ 1

II.  Plaintiff Has Only Exhausted Its Administrative Remedies Regarding the Fee Determination.............................................................................................................. 3

III. This Case Concerns "Review Fees," Not "Search Fees." .................................................. 8

IV. The Business Submitter Process Applies. ......................................................................... 9

    A.   Defendant Has Reason to Believe That Disclosure of the Commercial Information Could Reasonably Be Expected to Cause Substantial Competitive Harm............................ 9

    B.   Not All the Information Requested Has Been Previously Made Available to the Public.................................................................................................................................. 14

CONCLUSION.............................................................................................................. 17

# TABLE OF AUTHORITIES

**Cases**                                                                                                                  **Page(s)**

*Adair v. England,*
    183 F. Supp. 2d 31 (D.D.C. 2002) ........................................................................................ 13

*Apprio, Inc. v. Zaccari,*
    104 F.4th 897 (D.C. Cir. 2024) ...................................................................................... 4, 7, 8

*August v. FBI,*
    328 F.3d 697 (D.C. Cir. 2003) ............................................................................................ 16

*China Trade Ctr., L.L.C. v. Wash. Metro. Area Transit Auth.,*
    No. 99-7029, 1999 WL 615078 (D.C. Cir. July 2, 1999) (per curiam) ................................. 13

*Flaherty v. President of U.S.,*
    796 F. Supp. 2d 201 (D.D.C. 2011) ...................................................................................... 6

*Gov't of Manitoba v. Bernhardt,*
    923 F.3d 173 (D.C. Cir. 2019) .............................................................................................. 4

*Jud. Watch, Inc. v. Rossotti,*
    326 F.3d 1309 (D.C. Cir. 2003) ........................................................................................... 5

*Kisor v. Wilkie,*
    588 U.S. 558 (2019) ............................................................................................................ 2

*Kowal v. Dep't of Just.,*
    --- F.4th ---, No. 22-5231, 2024 WL 3418844 (D.C. Cir. July 16, 2024) ............................ 13

*Larson v. CIA,*
    843 F.2d 1481 (D.C. Cir. 1988) ....................................................................................... 1, 2

*Marcusse v. Dep't of Just. Off. of Info. Pol'y,*
    959 F. Supp. 2d 130 (D.D.C. 2013) ................................................................................. 7, 13

*Miller v. Casey,*
    730 F.2d 773 (D.C. Cir. 1984) ........................................................................................... 15

*Nat'l Sec. Couns. v. CIA,*
    898 F. Supp. 2d 233 (D.D.C. 2012) ..................................................................................... 2

\* *Oglesby v. Dep't of Army,*
    920 F.2d 57 (D.C. Cir. 1990) ..................................................................................... 5, 6, 7, 8

*San Diego Gas & Elec. Co. v. FERC,*
    913 F.3d 127 (D.C. Cir. 2019) .............................................................................................. 2

*Sissel v. Wormuth,*
    77 F.4th 941 (D.C. Cir. 2023) .............................................................................................. 1

*Wis. Voters All. v. Harris*,
    28 F.4th 1282 (D.C. Cir. 2022) ................................................................................ 15

**Statutes**

\*   5 U.S.C. § 552 ................................................................... 1, 2, 4, 5, 6, 7, 8, 11

**Other**

6 C.F.R. § 5.5 ............................................................................................................ 4

6 C.F.R. § 5.7 ..................................................................................................... 8, 14

6 C.F.R. § 5.11 ................................................................................................... 8, 14

\*   6 C.F.R. § 5.12 ........................................................... 2, 8, 9, 10, 11, 12, 13, 14

Defendant, U.S. Customs and Border Protection ("CBP" when quoted) respectfully requests that the Court grant its pending dispositive motion.  Defendant's business submitter regulation applies, and Defendant has underestimated, not overestimated its review fees. Defendant respectfully refers the Court to its attached response and reply to Plaintiff's statement of facts (ECF No. 8-3).  Defendant requests that the Court enter judgment in Defendant's favor.

## ARGUMENT

### I.      *De Novo* Review Is the Exception, Not the Norm, for Agency Action.

When reviewing agency action, "the default standard of review . . . is ordinary arbitrary-and-capricious review."  *Sissel v. Wormuth*, 77 F.4th 941, 946 (D.C. Cir. 2023).  FOIA does permit an exception to this default standard of review, but only in limited circumstances—specifically, "[i]n any action by a requester regarding the waiver of fees under this section, the court shall determine the matter *de novo*."  5 U.S.C. § 552(a)(4)(A)(vii).  This is not an action regarding the waiver of fees under 5 U.S.C. § 552.  Indeed, Plaintiff did not request a fee waiver when it submitted its FOIA request and instead expressed its "WILLINGNESS TO PAY FOR RECORDS."  Pl.'s FOIA Request (ECF No. 1-5) at 5 (capitalization in original).  Rather, the issue in this action is Defendant's determination that Plaintiff's FOIA request triggers its business submitter regulation, thereby requiring Defendant to provide businesses with notification of Plaintiff's FOIA request, which in turn increases the review fees that Plaintiff must pay.

The primary authority on which Plaintiff relies for *de novo* review, *Larson v. CIA*, 843 F.2d 1481 (D.C. Cir. 1988), serves only to demonstrate the difference between a fee waiver case and this case.  In *Larson*, the plaintiff "requested a fee waiver" because he "inten[ded] to distribute the documents to a major newspaper company."  *Id.* at 1481–82.  The court explained that the fee waiver test "provides a two-pronged analysis": "One prong demands that the requester not have a commercial interest in the disclosure of the information sought," *id.* at 1483; *contra* Compl. (ECF

No. 1) ¶ 9 ("The purpose for requesting the records is for commercial use."); and "[t]he other prong of the test requires that the disclosure of the information be 'likely to contribute significantly to public understanding of the operations or activities of the government,'" *Larson*, 843 F.2d at 1483 (quoting 5 U.S.C. § 552(a)(4)(A)(iii)).  Because the plaintiff failed to satisfy this test, it applied *de novo* review and held that "the CIA properly concluded that [plaintiff] was not entitled to the fee waiver." *Larson*, 843 F.2d at 1483.

Plaintiff's remaining authorities on the standard of review stand merely for the unobjectionable proposition that, for "a purely legal question of statutory interpretation[,] the Court will review *de novo*." Pl.'s Opp'n at 15 (quoting *Nat'l Sec. Couns. v. CIA*, 898 F. Supp. 2d 233, 274 (D.D.C. 2012)).  But Plaintiff does not present a question of statutory interpretation; rather, Plaintiff presents a question of whether a particular FOIA request seeks records for which Defendant "has reason to believe that disclosure of the commercial information could reasonably be expected to cause substantial competitive harm." 6 C.F.R. § 5.12(b)(1)(ii).  This is a fact-bound determination that is squarely within the agency's wheelhouse, requiring knowledge of records in the agency's possession, custody, or control, the relationship between the agency and the businesses that submit their information to it, and insights into the industry at hand.

In assessing this fact-bound determination, the Court should give Defendant *Auer* deference.  While courts "rarely" give *Auer* deference to an agency construction that conflicts with a prior one, "rarely" does not mean never. *Kisor v. Wilkie*, 588 U.S. 558, 579 (2019); *see also San Diego Gas & Elec. Co. v. FERC*, 913 F.3d 127, 146 n.6 (D.C. Cir. 2019) (Randolph, J., dissenting) (criticizing the majority for applying *Auer* deference in light of agency's earlier conflicting position).  The agency's interpretation is not a "post hoc" "litigating position," *San Diego Gas*, 913 F.3d at 146 n.6, but rather is a decision that the agency reached after deliberation,

communicated to the industry, and has applied consistently since approximately October 1, 2020, almost four years ago, *see* Declaration of Patrick A. Howard ("Howard Decl.," ECF No. 6-4) ¶ 32; Email Dated Sept. 18, 2020 (ECF No. 6-12) at 2 ("For your awareness, the FOIA process to request Limited Payab[i]lity (stale dated check) records from CBP is changing effective October 1, 2020. . . . If you seek to obtain a replacement check(s) from CBP for a record(s) listed on Treasury's Limited Pay report, such requests should be submitted to CBP at REVREFUNDINQUIRY@cbp.dhs.gov and, if applicable, must include proper authorization/authority (such as Power of Attorney) to do so on behalf of the party due the original refund."). Further, "Plaintiff does not dispute that Defendant maintains authority to update its interpretation of regulations, with or without a comment period or notice to the public." Pl.'s Opp'n at 20.

To the extent Plaintiff urges that the regulation's meaning is plain, Defendant would agree that the regulation plainly supports Defendant's interpretation. The parties have divergent opinions as to how "plain" this purportedly unambiguous regulation is in the face of this particular FOIA request. If the Court finds the regulation unambiguous, then Defendant agrees that *Auer* deference is unnecessary, but if the Court does find the interpretation of the regulation to be ambiguous in the context of this particular FOIA request, then Defendant submits that *Auer* deference should apply. In any event, regardless of the standard of review or applicability of deference, Defendant submits that it has correctly applied its business submitter regulation.

## II.    Plaintiff Has Only Exhausted Its Administrative Remedies Regarding the Fee Determination.

Plaintiff urges that Defendant missed a deadline for responding to Plaintiff's FOIA request and that, as a result, Defendant cannot charge fees and Plaintiff need not exhaust its administrative remedies, but the timeline demonstrates that Defendant did not miss a single deadline.

- Sept. 25, 2023: Plaintiff submitted the FOIA request at issue.  *See* Pl.'s Resp. to Stmt. of Facts (ECF No. 8-3) ¶ 9.

- Oct. 20, 2023: Defendant invoked the ten-business-day extension.  *See* Def.'s Ltr. (ECF No. 1-8) at 33 ("As your request seeks a voluminous amount of separate and distinct records, CBP will invoke a 10-day extension for your request pursuant to 6 C.F.R. Part 5 § 5.5(c).").

- Oct. 24, 2023: Twenty working days after Plaintiff submitted the FOIA request. *See* Pl.'s Stmt. of Facts (ECF No. 8-3) ¶ 27.  This deadline, however, was tolled by Defendant's correspondence dated October 20, 2023.  *See* 5 U.S.C. § 552(a)(6)(B)(i).

- Oct. 26, 2023: Defendant provided the fee determination.  *See* Pl.'s Resp. to Stmt. of Facts (ECF No. 8-3) ¶ 12.

- Nov. 7, 2023: The ten-business-day extension would have ended.  *See id.* ¶ 27.

- Nov. 13, 2023: Plaintiff submitted an administrative appeal of the fee determination.  *See id.* ¶ 19.

- Dec. 12, 2023: Defendant sent a final determination letter for Plaintiff's administrative appeal.  *See id.* ¶ 20.

- Feb. 8, 2024: Plaintiff initiated this action.  *See id.* ¶ 23.

Plaintiff's opposition (ECF No. 8) is obtuse, but it could arguably be construed in two different ways, neither of which comports with the law and neither of which is laid out in more than skeletal form.  Because Plaintiff has failed to explain its argument and offer support, it has forfeited any such argument.  *See Apprio, Inc. v. Zaccari*, 104 F.4th 897, 910 (D.C. Cir. 2024) ("[A] party forfeits an argument by mentioning it only in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.") (quotation marks omitted; quoting *Gov't of Manitoba v. Bernhardt*, 923 F.3d 173, 179 (D.C. Cir. 2019)).

First, Plaintiff may be arguing that Defendant was not entitled to invoke the ten-business-day exception when it invoked it on October 20, 2023, and that, as a result, when October 24, 2023, rolled around, it actually exhausted all claims pertaining to its FOIA request and could immediately run to court.  As an initial matter, there was nothing improper with Defendant

4

invoking the ten-business-day extension.  *See* 5 U.S.C. § 552(a)(6)(B)(i) ("In unusual circumstances as specified in this subparagraph, the time limits prescribed in either clause (i) or clause (ii) of subparagraph (A) may be extended by written notice to the person making such request setting forth the unusual circumstances for such extension and the date on which a determination is expected to be dispatched.").  The statute defines "unusual circumstances" as existing where there is a "need to search for, collect, and appropriately examine a voluminous amount of separate and distinct records which are demanded in a single request."  *Id.* § 552(a)(6)(B)(iii)(II).  Plaintiff's five-part FOIA request that attached two spreadsheets with 108 rows, which identify a multitude of businesses, qualifies by a country mile; indeed, Plaintiff's FOIA request spans nineteen pages of the Court's docket.  *See* Pl.'s FOIA Request (ECF No. 1-8) at 11–29.

But even if Plaintiff would have argued and established that Defendant should not have invoked the ten-business-day extension and that, as a result, Plaintiff would have constructively exhausted its administrative remedies on October 24, 2023, actual exhaustion was required once Defendant provided Plaintiff with the fee demand two days later.  Plaintiff is attempting to bifurcate exhaustion in a way foreclosed by D.C. Circuit precedent.  *See, e.g.*, *Jud. Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1310 (D.C. Cir. 2003) ("If the agency responds to the request after the twenty-day statutory window, but before the requester files suit, the administrative exhaustion requirement still applies."); *Oglesby v. Dep't of Army*, 920 F.2d 57, 61 (D.C. Cir. 1990) ("Once the agency has responded to the request, the petitioner may no longer exercise his option to go to court immediately.").

As the D.C. Circuit has confirmed, "if the agency responds to a FOIA request before the requester files suit, the ten-day constructive exhaustion provision in 5 U.S.C. § 552(a)(6)(C) no

longer applies; actual exhaustion of administrative remedies is required." *Oglesby*, 920 F.2d at 61.

"[A]n administrative appeal is mandatory if the agency cures its failure to respond within the statutory period by responding to the FOIA request before suit is filed." *Id.* at 63; *see also id.* at 63–64 ("The ten-day constructive exhaustion under 5 U.S.C. § 552(a)(6)(C) allows immediate recourse to the courts to compel the agency's response to a FOIA request.  But once the agency responds to the FOIA request, the requester must exhaust his administrative remedies before seeking judicial review.").  "We believe that where a requester has chosen to wait past the ten-day period until the agency has responded, Congress intended that the administrative route be pursued to its end." *Id.* at 64.  Congress "did not mean for the court to take over the agency's decisionmaking role in midstream or to interrupt the agency's appeal process when the agency has already invested time, resources, and expertise into the effort of responding." *Id.*

To the extent that Plaintiff argues it constructively exhausted its claims because Defendant replied on October 26, 2023, instead of October 24, 2023, the purported two-day delay in question was mooted once Defendant did provide a response on October 26, 2023.  *See id.* at 63–64.  Thus, rather than come to Court, Plaintiff submitted an administrative appeal on November 13, 2023, which undisputedly was within its deadline to submit an administrative appeal.[1]  *See* Pl.'s Resp. to Stmt. of Facts (ECF No. 8-3) ¶ 19.  Defendant promptly resolved the appeal, and Plaintiff promptly filed this action in this Court.  *See id.* ¶ 20; *see also Flaherty v. President of U.S.*, 796 F. Supp. 2d 201, 209 (D.D.C. 2011) ("Thus, although the defendant failed to respond within the twenty-day statutory time limit, because the plaintiff did not file a lawsuit before the defendant's untimely response to his third request on January 26, 2009, the plaintiff cannot now claim

---

[1]    Plaintiff can offer no authority for treating a misstated administrative-appeal deadline as having any legal consequence, especially when Plaintiff indisputably appealed the fee determination within the time allotted.

constructive exhaustion.").  The Court thus may review only the fee determination.  To review the merits of a future search or future invocation of possible FOIA exemptions would be to "take over the agency's decisionmaking role in midstream or to interrupt the agency's appeal process when the agency has already invested time, resources, and expertise into the effort of responding." *Oglesby*, 920 F.2d at 64.

Alternatively, Plaintiff may be arguing that Defendant's fee determination letter does not toll FOIA's timelines and is of no moment.  In other words, Plaintiff may recognize that Defendant appropriately invoked the ten-business-day extension and replied before that deadline expired (October 26, 2023 vs. November 7, 2023) but may believe that a FOIA requestor can just refuse to pay a fee and still expect the agency to process its request.  Again, this argument is not presented in Plaintiff's opposition and is forfeited.  *See Apprio*, 104 F.4th at 910.  It is also an argument that Congress has foreclosed and that, if accepted, would effectively destroy FOIA's fee regime.  *See* 5 U.S.C. § 552(a)(6)(A)(ii)(II) (permitting tolling "if necessary to clarify with the requester issues regarding fee assessment").  Once Defendant provided Plaintiff with a fee estimate, the parties proceeded to discuss that fee estimate, with Plaintiff disputing review fees and taking an administrative appeal, Defendant resolving the administrative appeal, and Plaintiff coming to Court after actually exhausting the fee issue.  That is the only issue exhausted here today, and Plaintiff was required to pay the fee for Defendant to process its FOIA request.  *See Marcusse v. Dep't of Just. Off. of Info. Pol'y*, 959 F. Supp. 2d 130, 141 (D.D.C. 2013) ("[A] FOIA requester must pay any reasonably assessed fees before obtaining judicial review.").  Moreover, to the extent that Plaintiff believes that it constructively exhausted its claim on November 8, 2023, because it had not received a final response on the merits since it had not paid the fee, again the fact that

Plaintiff submitted an administrative appeal on November 13, 2023, prevents Plaintiff from arguing constructive exhaustion. *See Oglesby*, 920 F.2d at 64.

## III.    This Case Concerns "Review Fees," Not "Search Fees."

Similarly, Plaintiff's argument that fees should not be assessed at all in this action because Defendant purportedly missed a deadline fails both for the reasons addressed in the preceding section (namely, Defendant did not miss any deadline) and because it confuses the fees at issue. *See* Pl.'s Opp'n at 19. FOIA provides that "[e]xcept as provided in subclause (II), an agency shall not assess any search fees (or in the case of a requester described under clause (ii)(II) of this subparagraph, duplication fees) under this subparagraph if the agency has failed to comply with any time limit under paragraph (6)." 5 U.S.C. § 552(a)(4)(A)(viii)(I). The fees at issue here are neither search fees nor duplication fees; rather, they are review fees. *See* Howard Decl. ¶ 35 ("I confirm that the fee estimate of $738 underestimates the costs of review time to process this FOIA request.").[2]

There are three categories of fees for FOIA requests: (1) "[s]earch fees," 6 C.F.R. § 5.11(c)(1); (2) "[d]uplication fees," *see id.* § 5.11(c)(2); and (3) "[r]eview fees," *id.* § 5.11(c)(3); *see also* 5 U.S.C. § 552(a)(4)(A)(ii)(I) ("[F]ees shall be limited to reasonable standard charges for document search, duplication, and review, when records are requested for commercial use[.]"). "Review" fees include "time spent both obtaining and considering any formal objection to disclosure made by a confidential commercial information submitter under § 5.7 or § 5.12." 6 C.F.R. § 5.11(b)(7). Accordingly, because the fees at issue are review fees, not search fees or

---

[2]    The initial fee determination letter (ECF No. 1-7) referenced both search time and review time. Defendant has confirmed that $738 underestimates the costs of review time specifically. Howard Decl. ¶ 35. By failing to provide any reason to contest this fee estimate beyond Plaintiff's assertion that the business submitter process should not have been applied, Plaintiff has forfeited any other argument to Defendant's calculation of the fee. *See Apprio*, 104 F.4th at 910.

duplication fees, FOIA's waiver, in certain cases, of search fees and duplication fees is inapposite.[3] But in any event, Defendant did not miss a deadline here.  *See* Part II, *supra*.

## IV.    <u>The Business Submitter Process Applies.</u>

The agency here has carefully considered the FOIA request at issue and its regulation, and it has concluded that it must notify business submitters when it receives this sort of FOIA request. Howard Decl. ¶ 32.  Each of Plaintiff's arguments in opposition fails.

### A.    **Defendant Has Reason to Believe That Disclosure of the Commercial Information Could Reasonably Be Expected to Cause Substantial Competitive Harm.**

The agency's regulation provides that "CBP will provide business submitters with notice of receipt of a FOIA request or appeal whenever: . . . CBP has reason to believe that disclosure of the commercial information could reasonably be expected to cause substantial competitive harm." 6 C.F.R. § 5.12(b)(1)(ii).  This is a low bar.  The regulation does not require it to be the case that disclosure will cause substantial competitive harm, or even that disclosure could reasonably be expected to cause substantial competitive harm, or even that the agency believes that disclosure could reasonably be expected to cause substantial competitive harm.  *See id.*  The regulation requires only that the agency have "reason" to "believe" that disclosure "could reasonably be expected" to cause substantial competitive harm.  *Id.*

Defendant clears this low bar.  Plaintiff's FOIA request seeks five categories of records:

1. All records showing or depicting funds from [CBP] which attempt to return the funds to any person or entity, only for the information described in the attached Exhibit 101(A) and Exhibit 101(B);

---

[3]    Defendant notes that, if Plaintiff's argument were correct, then the appropriate remedy would be a remand for Defendant to process the FOIA request without payment of fees. Thereafter, Plaintiff would be permitted to file an action in Court once it constructively or actually exhausts the administrative appeal process regarding the merits determination.  This result would provide Plaintiff with no clarity as to whether the business submitter process should continue to apply for fee determinations for any similar FOIA request in the future.

2.  All checks which have been issued by CBP which have been replaced by CBP;

3.  All checks which have been issued by CBP which remain in their canceled status;

4.  All records showing or depicting information about canceled checks;

5.  All records showing or depicting that status of funds of persons or entities in the attached Exhibit 101(A) and Exhibit 101(B).

Pl.'s FOIA Request (ECF No. 1-5) at 3. There is a gulf between the way that Plaintiff characterizes its FOIA request in its opposition—as just seeking "status updates to stale dated checks," Pl.'s Opp'n at 23; *see also id.* at 22 ("simply requesting an update for checks")—and the actual, five-part FOIA request at issue. The request for "[a]ll records showing or depicting information about canceled checks," Pl.'s FOIA Request (ECF No. 1-5) at 3, is broad enough to encompass commercial information that "could reasonably be expected to cause substantial competitive harm." 6 C.F.R. § 5.12(b)(1)(ii). Plaintiff's FOIA request seeks "financial information provided to CBP upon the original commercial transaction between the business and CBP," which "would contain the name of the company (payee), address, payee ID number, check number, amount of replacement check and whether a replacement check was reissued by CBP." Howard Decl. (ECF No. 6-4) ¶ 29. "This is confidential and financial information unique to the specific business, which should be afforded opportunity to review and comment on the release of its information under FOIA, through the business submitter process." *Id.*

Plaintiff halfheartedly argues that its FOIA request does not trigger 6 C.F.R. § 5.12(b)(1)(ii), with Plaintiff's response to the statement of facts even acknowledging that its FOIA request seeks "disputably novel transactions." Pl.'s Resp. to Stmt. of Facts (ECF No. 8-3) ¶ 17. Plaintiff primarily argues, "[i]n the alternative," that "even if *some* records *could* include 'commercial information' as defined by DHS regulations, Defendant is authorized to withhold any such records without invoking the business submitter process." Pl.'s Opp'n at 23 (emphasis in

10

original).  Relying on a provision exempting notice in situations where "CBP determines that the commercial information will not be disclosed," 6 C.F.R. § 5.12(b)(2)(i), Plaintiff seems to suggest that Defendant could unilaterally withhold or perhaps unilaterally treat as nonresponsive any information that it believes is commercial information without falling afoul of FOIA and without alerting the businesses that their information has been requested.  *See* Pl.'s Opp'n at 23.  This is incorrect.  Courts (and FOIA requestors) would understandably balk if Defendant interpreted its regulation as giving it that unilateral power.  *Cf.* JAMES MADISON, THE PACIFICUS-HELVIDIUS DEBATES OF 1793-94: TOWARD THE COMPLETION OF THE AMERICAN FOUNDING at Helvidius No. IV (Morton J. Frisch ed., 2007), *available at* https://oll.libertyfund.org/titles/frisch-the-pacificus-helvidius-debates-of-1793-1794# (warning of the risks of "executive aggrandizement"). Instead, this exemption applies in situations in which there is another problem with the FOIA request, such as where a requestor submits an unduly burdensome request that seeks "all documents in the agency's possession," full stop.  It does not give the agency the power to determine that it will not disclose commercial information in response to a FOIA request simply because the agency does not feel like doing so.  That would violate 5 U.S.C. § 552.

Plaintiff also suggests that the four objections Defendant received from other businesses regarding Plaintiff's prior FOIA request seem to "imply a mischaracterization of Plaintiff's prior FOIA request."  Pl.'s Opp'n at 21.  Defendant emphasizes that these are different businesses than the businesses at issue in this action, and Defendant has not argued that these prior objections mean that the information requested in the operative FOIA request has been "designated . . . as commercially- or financially-sensitive information," 6 C.F.R. § 5.12(b)(1)(i).  Rather, these objections serve only to bolster Defendant's belief—gilding the lily—that this FOIA request seeks commercial information for which Defendant "has reason to believe that disclosure . . . could

reasonably be expected to cause substantial competitive harm," *id.* § 5.12(b)(1)(ii).    The businesses' responses do not imply any sort of mischaracterization regarding Plaintiff's prior FOIA request.  *See, e.g.*, Industries SpA's Resp. (ECF No. 6-8) at 2 ("This will confirm that Industries SpA does not wish for its confidential information to be released."); Roche Diagnostics' Resp. (ECF No. 6-9) at 2 ("As discussed during our call, this e-mail confirms that Roche Diagnostics requests that CBP not notify any third party regarding its confidential business information."); Carl Zeiss, Inc.'s Resp. (ECF No. 6-10) at 2 ("I respectfully request that CBP does not share our corporate information with the third party requesting our information."); Bio-Rad Labs., Inc.'s Resp. (ECF No. 6-11) at 2 ("The reasons for this objection are the information provided to CBP is required, it is business confidential information, and its release would cause substantial harm to our competitive position.").  What they do imply is that at least some businesses want to be informed when a company submits a FOIA request for commercial use that attempts to identify a specific financial transaction involving their companies and that they do not want unaffiliated companies to receive that information.

Plaintiff's expressed disbelief that businesses would mind if the government provides information about their financial transactions appears to color Plaintiff's insistence that these four businesses, some of which requested and received additional phone calls with Defendant to discuss Plaintiff's prior FOIA request in detail, *see, e.g.*, Industries SpA's Resp. (ECF No. 6-8) at 2 ("It was a pleasure speaking with you today."); Roche Diagnostics' Resp. (ECF No. 6-9) at 2 ("Thank you for our call today."); Carl Zeiss, Inc.'s Resp. (ECF No. 6-10) at 2 ("Thank you for taking the time to speak with me this afternoon."),[4] must have misunderstood or been misled about the

---

[4]    Defendant notes that the need for these separate phone calls on, respectively, January 5, 6, and 10, 2023, further demonstrates how much of an underestimate "ten minutes" of review time for each row of the spreadsheet truly was, *see* Howard Decl. ¶ 23, not to mention the time expended

information Plaintiff requested.  *See also Adair v. England*, 183 F. Supp. 2d 31, 60 (D.D.C. 2002) ("Well-settled case law instructs courts to presume that government officials will conduct themselves properly.  As this court has said, 'government officials are presumed to act in good faith.  Plaintiff must present well-nigh irrefragable proof of bad faith or bias on the part of governmental officials in order to overcome this presumption.'") (cleaned up); *see also China Trade Ctr., L.L.C. v. Wash. Metro. Area Transit Auth.*, No. 99-7029, 1999 WL 615078, at *1 (D.C. Cir. July 2, 1999) (per curiam) (summarily affirming in light of "presumption of validity" for government officials); *Kowal v. Dep't of Just.*, --- F.4th ---, No. 22-5231, 2024 WL 3418844, at *2 (D.C. Cir. July 16, 2024) ("presumption of good faith" in FOIA litigation).  Plaintiff cannot overcome that presumption here, and it is beside the point in any event.  The issue is that Defendant has "reason to believe that disclosure of the [requested] commercial information could reasonably be expected to cause substantial competitive harm."  6 C.F.R. § 5.12(b)(1)(ii).  An analysis of the five-part FOIA request at issue here demonstrates that Defendant has, at minimum, a "reason to believe" that disclosure could be expected to cause substantial competitive harm.  *See id.*  How any ultimate Exemption 4 withholding would ultimately fare in court is not an issue for the Court to decide here today, especially given that this request was closed for nonpayment of the fee and Defendant has not, at this point, determined whether it would invoke Exemption 4 if Plaintiff would have paid the fee.  *See Marcusse*, 959 F. Supp. 2d at 141.

---

identifying the contact information for the businesses, preparing the notifications to the businesses, back-and-forth emailing with businesses, which may be represented by outside counsel, and ultimately reviewing any responsive records.  *See id.* ¶ 35 (confirming that "the fee estimate of $738 underestimates the costs of review time").

**B.      Not All the Information Requested Has Been Previously Made Available to the Public.**

Even when Defendant has reason to believe that a FOIA request calls for disclosure of commercial information that could reasonably be expected to cause substantial competitive harm, it is not required to provide notice if "[t]he commercial information has been lawfully published or otherwise made available to the public."  6 C.F.R. § 5.12(b)(2)(ii).  Notably, notice is "not required" in this instance, *id.*, but it is not prohibited either.  This permissive exemption is sensible because Defendant often cannot be expected to know ahead of time whether commercial information sought by a FOIA request has been made available to the public.  As such, even if Plaintiff could demonstrate that all the requested information was made available to the public, there is nothing improper with Defendant providing notice to the impacted businesses and for charging review time accordingly.  *See id.* § 5.11(b)(7) ("Review time also includes time spent both obtaining and considering any formal objection to disclosure made by a confidential commercial information submitter under § 5.7 or § 5.12[.]").

In any event, it is not the case that all the information requested here was previously made available to the public.  *See* Howard Decl. ¶ 30 ("CBP acknowledges that some of the information identified in the preceding paragraph is commercial information that has been 'otherwise made available to the public,' but it is not the case that all information requested by Plaintiff's FOIA request has been otherwise made available to the public.  For instance, the fact that a replacement check was or was not requested by the business and reissued by the government is a new transaction not yet publicly available and reveals commercial information both (1) about the business and (2) from the business.").  The fact that a particular financial transaction (reissuance) occurred or did not occur is new information that has not been previously disclosed.  *Id.*  If it were, Plaintiff presumably would not have bothered submitting a request for commercial use to

Defendant for this novel information.  This is the core of Plaintiff's FOIA request, and the core is new information that has not previously been disclosed.

This is yet an easier case, though.  Plaintiff's FOIA request cannot be boiled down to its core without doing violence to the text of the five-part request, and the parties agree that they are "obligated to read the request as it is written, not as [they] might wish the request were written." Pl.'s Opp'n at 21 (citing *Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir. 1984)).  Plaintiff cannot and does not contend that "[a]ll records showing or depicting information about canceled checks" or "[a]ll records showing or depicting that status of funds of persons or entities in the attached Exhibit 101(A) and Exhibit 101(B)" have been publicly disclosed, and that is what Plaintiff's FOIA request demands.  Pl.'s FOIA Request (ECF No. 1-5) at 3.  Accordingly, at least some of the requested information has not been previously made available.  Defendant has appropriately complied with its business submitter regulation in response to Plaintiff's FOIA request.

\*    \*    \*

Defendant understands that Plaintiff is frustrated by the change in Defendant's policy, which was communicated to Plaintiff on September 18, 2020, *see* Email (ECF No. 6-12) at 2, and which has, for almost four years now, been "uniformly applied across the board to FOIA requestors who submit these types of requests," Howard Decl. (ECF No. 6-4) ¶ 32.  Defendant understands that Plaintiff believes that it would be better for Plaintiff and easier for Defendant not to bother with the business submitter process.  Defendant understands that Plaintiff preferred the way things were before.  *But see Wis. Voters All. v. Harris*, 28 F.4th 1282,1285 (D.C. Cir. 2022) (warning courts of the perils of "den[ying] the agency an opportunity to correct its own mistakes and to apply its expertise").  But there are third party interests at stake here that the government must consider and that would prevent the enforcement of any sort of waiver principle, even if Plaintiff

could muster authorities indicating that Defendant can never change its policy, as "[t]he law does not require that third parties pay for the Government's mistakes." *August v. FBI*, 328 F.3d 697, 701 (D.C. Cir. 2003); *see also id.* ("Nothing in [our prior FOIA cases] requires that we order disclosure solely to deter the Government from playing 'cat and mouse games' where, as here, not only did the Government's behavior result from a mistake, but doing so would endanger the safety and privacy of third parties—who, after all, bear no responsibility for the Government's [action].").

Defendant is endeavoring to fulfill its obligations under the law while dealing with an avalanche of FOIA requests. Defendant asks the Court to allow it to use the tools at its disposal to be able to make a fully informed judgment as to whether any FOIA exemptions, including Exemption 4, should be invoked. To do that, it must be permitted to inform business submitters of the request and charge FOIA requestors appropriately. Accordingly, Defendant submits that the Court should grant this motion.

*      *      *

**CONCLUSION**

For the foregoing reasons and those stated in Defendant's opening brief, Defendant respectfully requests that this Court dismiss the above-captioned case, or, in the alternative, grant summary judgment in Defendant's favor.

Dated: August 8, 2024                    Respectfully submitted,

                                         MATTHEW M. GRAVES, D.C. Bar #481052
                                         United States Attorney

                                         BRIAN P. HUDAK
                                         Chief, Civil Division


                                         By:        /s/ *Douglas C. Dreier*
                                         _____
                                              DOUGLAS C. DREIER, D.C. Bar #1020234
                                              Assistant United States Attorney
                                              601 D Street, NW
                                              Washington, DC 20530
                                              (202) 252-2551

                                         *Attorneys for the United States of America*