UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AMERICAN PROPERTY LOCATORS, INC.**,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>**UNITED STATES CUSTOMS AND BORDER PROTECTION**,<br><br>　　　　　Defendant. | Civil Action No. 24-cv-00379 (TSC) |

### MEMORANDUM OPINION

Plaintiff American Property Locators, Inc., sues the United States Customs and Border Protection ("CBP") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Because Plaintiff submitted a commercial use FOIA request for financial records submitted by third parties to CBP, CBP provided a fee estimate to search, duplicate, and review the records. The fee estimate included review time associated with the business submitter process, which CBP may apply to FOIA requests seeking commercial information that CBP obtained from third-party businesses or individuals. Plaintiff challenges CBP's fee estimate, arguing that the business submitter process should not apply. Defendant has moved to dismiss or, in the alternative, for summary judgment, ECF No. 6. Because Defendant's decision to apply the business submitter process was reasonable, the court will GRANT Defendant's motion.

### I.　　　BACKGROUND

Plaintiff, an asset recovery company, routinely files FOIA requests for financial records regarding checks CBP issues to private third parties (the "payees"). *See* Compl. ¶ 5; Pl.'s Mem. in Supp. of Pl.'s Opp'n to Def.'s Mot. at 5–6, ECF No. 8-4 ("Pl.'s Opp'n"). The United States

Department of Treasury automatically cancels checks that have been outstanding for one year and returns the funds to the originating agency. Decl. of Patrick A. Howard ¶ 19, ECF No. 6-4 ("Howard Decl."); *Limited Payability Cancellation*, U.S. Department of the Treasury, https://tfx.treasury.gov/taxonomy/term/10593. The cancelled checks are then considered "stale dated." Howard Decl. ¶ 5. To obtain payment, the payee must request a reissuance or replacement check from the originating agency. *See* Pl.'s Opp'n at 7–8.

Plaintiff obtains stale check and payee information from public reports filed by the Department of Treasury's Bureau of Fiscal Services. Decl. of Ronnie Braun Leppke ¶ 7, ECF No. 8-2 ("Leppke Decl."); Howard Decl. ¶ 19. The public reports identify the payee, check number, check date, and check amount, but do not reveal "whether checks have or have not been reissued." Pl.'s Opp'n at 24; Def.'s Reply to Pl.'s Statement of Material Facts at 5–6, ECF No. 9-1 ("Def.'s SOF Reply").[1] To determine whether the checks have already been reissued, Plaintiff submits FOIA requests to the originating agency—here, CBP—for "records showing or depicting information about canceled checks," including whether the checks have been replaced. Compl. Ex. 101—FOIA Request at 3, ECF No. 1-2. Using the information provided in response to its FOIA requests, Plaintiff attempts to coordinate a check reissuance to the payee prior to the statutory deadline to recover funds. Leppke Decl. ¶ 3; Howard Decl. ¶ 19. If Plaintiff seeks confidential information on behalf of a client, it includes a power of attorney or other indication that the payee consents to Plaintiff's request. Howard Decl. ¶ 2; Leppke Decl. ¶ 7.

On September 25, 2023, Plaintiff submitted the FOIA request at issue here. Howard Decl. ¶ 18. The request attached two lists of stale checks—identified by check number, check date, check amount, payee ID, check symbol, payee name, and address. Compl. Ex. 101 at 7–20.

---

[1] For all filings lacking page numbers, the page cited is the page of the PDF file.

For the 108 identified stale checks, Plaintiff requested all: (1) "records showing or depicting funds from [CBP] which attempt to return funds to any person or entity" in the attached lists; (2) "checks which have been issued by CBP which have been replaced by CBP;" (3) "checks which have been issued by CBP which remain in their canceled status;" (4) "records showing or depicting information about canceled checks;" and (5) "records showing or depicting that status of funds of persons or entities" in the attached lists. *Id.* at 3.[2] CBP confirmed receipt on October 20, 2023, and issued a fee estimate on October 26, 2023. Leppke Decl. ¶¶ 20–21. Because Plaintiff is a "commercial requester," *id.* ¶ 29; Def.'s SOF Reply at 4; CBP may charge fees "for document search, duplication, and review," 5 U.S.C. § 552(a)(4)(a)(ii). The fee estimate totaled $738.00 based on 18 hours of managerial time at an hourly rate of $41 for "search, review, and [the] business submitter process." Leppke Decl. ¶ 21 (quoting Compl. Ex. 103 at 2, ECF No. 1-7); Howard Decl. ¶¶ 21–23.

CBP's business submitter process applies to FOIA requests seeking "[c]ommercial information," defined as trade secret, commercial, or financial information, "provided to CBP by a business submitter." 6 C.F.R. § 5.12(a). Pursuant to CBP's regulations, it must promptly notify business submitters of FOIA requests "encompass[ing] their commercial information" when (i) the business submitter "in good faith designated the information as commercially- or financially-sensitive information," or (ii) "CBP has reason to believe that disclosure of the commercial information could reasonably be expected to cause substantial competitive harm." *Id.* § 5.12(b). CBP allows the business submitter to object to disclosure and provide any grounds

---

[2] Although only the first and last category explicitly limit Plaintiff's request to records related to the 108 identified stale checks, both parties generally view Plaintiff's request as limited to records concerning the listed stale checks. Def.'s Mot. to Dismiss or, in the Alternative, for Summ. J. at 9, ECF No. 6-1 ("Def.'s Mot."); Pl.'s Opp'n at 21–22.

for withholding the information under FOIA's exemptions. *Id.* § 5.12(c). Prior to October 2020, CBP generally did not apply the business submitter process to "similar stale dated check FOIA requests." Howard Decl. ¶ 32. After reviewing its regulations, CBP determined the business submitter process should apply those requests. *Id.* And, in September 2020, it notified "frequent requestors," *id.*, including Plaintiff, of the change to the "FOIA process to request Limited Payability (stale dated check) records," Def.'s Ex. H—FOIA Request, ECF No. 6-12.

The fee estimate letter for the request at issue here notified Plaintiff that it could "contest CBP's fee estimate . . . by filing an appeal within 30 days." Compl. Ex. 103 at 3. On November 13, 2023, Plaintiff filed an administrative appeal, arguing that (1) the business submitter process should not apply, (2) the proper appeal period was ninety days, and (3) CBP failed to conduct an adequate search or issue a determination within twenty days. *See* Leppke Decl. ¶ 22; Compl. Ex. 104 at 3–8, ECF No. 1-8. CBP issued a final determination on December 12, 2023. Leppke Decl. ¶ 24; Def.'s SOF Reply at 7. It found the business submitter process applied because the requested records constitute "confidential commercial or financial information that is unique to the specific business submitter, and as such, the business submitter should be afforded the opportunity to weigh in on the release of its information." Compl. Ex. 106 at 6, ECF No. 1-10; *see also* Def.'s SOF Reply at 7–8. CBP also found that it "in fact undercharged for the fees" because its calculation omitted the staff time associated with the search, but it nonetheless honored the original $738 estimate. Compl. Ex. 106 at 6. Because Plaintiff's FOIA request was "still open and pending . . . and no final determination has been made," CBP did not address Plaintiff's search adequacy arguments. *Id.* at 4. CBP noted that Plaintiff was correct that the appropriate appeal period was ninety days, but it concluded that remanding the matter to issue a

fee estimate letter with the appropriate appeal period would only "penalize [Plaintiff by] creating additional delays." *Id.* at 5.

CBP remanded Plaintiff's request to the FOIA division for processing upon receipt of the fee, but informed Plaintiff that it could "obtain judicial review" of the determination under 5 U.S.C. § 552(a)(4)(B). *Id.* at 6–7. Because Plaintiff failed to pay the fee within thirty days of the appeal decision, CBP closed the request. Def.'s SOF Reply at 8–9. Plaintiff filed the Complaint on February 8, 2024. ECF No. 1. It seeks judicial review of CBP's fee estimate determination and alleges that CBP failed to conduct a reasonable search or produce responsive records. *Id.* ¶¶ 22, 27–30.

## II.   LEGAL STANDARD

Because the court will rely on matters beyond the pleadings, including evidence submitted by both parties, it will proceed under the standards for summary judgment. *See* Fed. R. Civ. P. 12(d); *see also Rios v. United States*, 275 F. Supp. 3d 88, 93 (D.D.C. 2017). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002) (citation omitted). A factual dispute is "material" if the facts involved "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "dispute about a material fact is 'genuine'. . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Courts "must view all facts, and draw all reasonable inferences, in the light most favorable to the party opposing the motion." *Lane v. District of Columbia*, 887 F.3d 480, 487 (D.C. Cir. 2018) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)).

"FOIA cases are typically and appropriately decided on motions for summary judgment." *Calderon v. U.S. Dep't of Agric.*, 236 F. Supp. 3d 96, 107 (D.D.C. 2017) (citing *Brayton v. Off. of the U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011)). "FOIA provides a 'statutory right of public access to documents and records' held by federal government agencies." *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 602 F. Supp. 2d 121, 123 (D.D.C. 2009) (quoting *Pratt v. Webster*, 673 F.2d 408, 413 (D.C. Cir. 1982)). "FOIA permits an agency to exact a reasonable charge for 'document search, duplication, and review, when records are requested for commercial use.'" *Cause of Action v. FTC*, 799 F.3d 1108, 1111 (D.C. Cir. 2015) (quoting 5 U.S.C. § 552(a)(4)(A)(ii)(I)). An agency may reduce or waive fees "if disclosure of the information is in the public interest . . . and is not primarily in the commercial interest of the requester" or the request is made by "a representative of the news media." *Id.* (quoting 5 U.S.C. § 552(a)(4)(A)(ii)–(iii)). Agencies must promulgate regulations "specifying the schedule of fees applicable to the processing of requests . . . and establishing procedures and guidelines for determining when such fees should be waived or reduced." 5 U.S.C. § 552(a)(4)(A)(i).

District courts review agency FOIA decisions *de novo*. 5 U.S.C. § 552(a)(4)(A)(vii), 552(a)(4)(B); *Al-Fayed v. CIA*, 254 F.3d 300, 305–07 (D.C. Cir. 2001). Defendant urges the court to apply a more deferential standard—either arbitrary-and-capricious review, under which courts presume the validity of agency action so long as it is "reasonable and reasonably explained," *Ramsingh v. Transp. Sec. Admin.*, 40 F.4th 625, 631–32 (D.C. Cir. 2022), or *Auer* deference, under which courts defer to an agency's reasonable interpretation of its genuinely ambiguous regulation, *Kisor v. Wilkie*, 588 U.S. 558, 573–78 (2019). *See* Def.'s Mot. to Dismiss or, in the Alternative, Mot. for Summ. J. at 12–14, ECF No. 6 ("Def.'s Mot."). Defendant advocates for a deferential standard because the dispute involves CBP's interpretation of its own

FOIA regulations. *Id.* The court declines to depart from the well-established practice of *de novo* review in FOIA cases. "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" *Dep't of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 755 (1989) (citing 5 U.S.C. § 552(a)(4)(B)); *see also Goldstein v. IRS*, 174 F. Supp. 3d 38, 45 (D.D.C. 2016). Congress specifically provided that *de novo* review applies to actions brought under 5 U.S.C. § 552(a)(4)(B)—the provision CBP identified as authorizing judicial review here. Compl. Ex. 106 at 7; 5 U.S.C. § 552(a)(4)(B) ("[T]he court shall determine the matter de novo . . . whether such records or any part thereof shall be withheld under any of the exemptions . . . and the burden is on the agency to sustain its action."). "Courts owe no deference to agency regulations interpreting the FOIA but may consult such regulations to the extent they are helpful and not inconsistent with the statutory text." *Liberman v. Dep't of Transp.*, 227 F. Supp. 3d 1, 8 (D.D.C. 2016) (citing *Cause of Action*, 799 F.3d at 1115, 1124); *see also Al-Fayed*, 254 F.3d at 305–07 ("[B]ecause FOIA's terms apply government-wide [] we generally decline to accord deference to agency interpretations of the statute, as we would otherwise do."). Based on FOIA's text, as interpreted by the Supreme Court and the D.C. Circuit, this court reviews the matter *de novo*.

### III. ANALYSIS

#### A. <u>Excessive Fees</u>

Typically, plaintiffs challenge agency delays in processing or producing records, the adequacy of the search, or the withholding of certain information. *See, e.g.*, *Kowal v. Dep't of Just.*, 107 F.4th 1018, 1026–27 (D.C. Cir. 2024). Occasionally, plaintiffs challenge an agency's determination regarding a fee waiver. *See, e.g.*, *Cause of Action*, 799 F.3d at 1111. The parties' fee dispute does not neatly fit into these traditional FOIA actions. Although Plaintiff challenges

CBP's fee amount, Pl.'s Opp'n at 19–25, it does not argue that it is entitled to a fee waiver, Leppke Decl. ¶ 29. The parties agree that Plaintiff is a "commercial requester," *id.*, meaning CBP may impose "reasonable standard charges for document search, duplication, and review," 5 U.S.C. § 552(a)(4)(A)(ii)(I); *see* Def.'s SOF Reply at 4. Plaintiff instead challenges CBP's decision to apply the business submitter process, resulting in a higher fee. Pl.'s Opp'n at 19–26. It argues that the "business submitter process does not apply to the instant FOIA request" and asks the court to "order CBP to reassess fees without the business submitter process." *Id.* at 20. Defendant maintains that the business submitter process applies and the fee estimate appropriately includes the associated review time. Def.'s Mot. at 16, 20. The parties agree that Plaintiff exhausted administrative appeal remedies as to CBP's fee determination. Def.'s Reply in Supp. of Def.'s Mot. at 6, ECF No. 9 ("Def.'s Reply").

The question therefore is whether CBP properly concluded that the business submitter process applied to Plaintiff's request. For "commercial use" requests, FOIA contains "two salient limitations on the fees an agency can charge requesters." *Nat'l Sec. Couns. v. U.S. Dep't of Just.*, 848 F.3d 467, 471 (D.C. Cir. 2017). Fees must be (1) "limited to reasonable standard charges," and (2) the agency "may recover 'only the direct costs of search, duplication, and review.'" *Id.* (quoting 5 U.S.C. § 552(a)(4)(A)(ii), (iv)). For the reasons explained below, the court is persuaded that CBP's business submitter process complies with FOIA's fee limitations and was properly applied to Plaintiff's requests.

i.   *Reasonable Standard Charges*

As the D.C. Circuit recently explained in *National Security Counselors v. Department of Justice,* an agency's policy violates FOIA's "reasonable standard charges" limitation if it "giv[es] rise to an improper inflation of fees that effectively denies access to requesters." 848 F.3d at 472. If the agency provides "a reasonable, non-obstructionist explanation" for the policy,

however, it does not violate FOIA's reasonable-charge mandate, even if "the policy may, to some degree, increase the cost of disclosure." *Id.*; *see also Clemente v. FBI*, 867 F.3d 111, 119 (D.C. Cir. 2017) ("An agency thus of course cannot impose requirements on requesters that take on the character of a shell game, imposing unwarranted burdens on requesters without apparent justification."); *Elec. Priv. Info. Ctr. v. IRS*, 261 F. Supp. 3d 1, 8 (D.D.C. 2017) ("[U]pfront procedures are permissible so long as they are 'reasonable.'" (quoting *Clemente*, 867 F.3d at 118–19)), *aff'd*, 910 F.3d 1232 (D.C. Cir. 2018).

Here, CBP "has come forward with a reasonable, non-obstructionist explanation," 848 F.3d at 472, for applying the business submitter process. CBP relies on its own regulations to justify its decision. Def.'s Mot. at 16–20. Pursuant to 6 C.F.R. § 5.12, CBP *may* apply the business submitter process whenever a FOIA request seeks "'commercial information,' [] defined as trade secret, commercial, or financial information obtained from a person," including business submitters, unless an exception applies, namely the information will not be disclosed, the information is already available to the public, or disclosure is required by law. 6 C.F.R. § 5.12(a), (b)(2). CBP *must* apply the business submitter process whenever (1) the "business submitter has in good faith designated the information as commercially- or financially-sensitive information," or (2) "CBP has reason to believe that disclosure of the commercial information could reasonably be expected to cause substantial competitive harm." *Id.* § 5.12(b)(1).

CBP reasonably concluded that Plaintiff's FOIA request sought business submitters' "commercial information" and the exceptions precluding the business submitter process did not apply. "Information is commercial if it pertains to the exchange of goods or services or the making of a profit." *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 58 F.4th 1255, 1263 (D.C. Cir. 2023). On its face, Plaintiff's FOIA request seeks financial information—it

states "THIS IS A REQUEST FOR FINANCIAL RECORDS" in bold, underlined, capital letters on the first page. Compl. Ex. 101 at 2. Specifically, Plaintiff requests "[a]ll records showing or depicting the status of funds of persons or entities in the attached" lists. *Id.* at 3. CBP explains that this request may encompass emails between CBP and business submitters regarding the original commercial transaction, the status of payee checks, the occurrence of novel financial transactions, and/or bank account information. Def.'s Mot. at 16–17; Def.'s Reply at 13–15. Courts have found similar records qualify as commercial information. *See e.g., Citizens for Resp. & Ethics in Wash. v. Dep't of Just.*, 728 F. Supp. 3d 113, 121–22 (D.D.C. 2024) (Records that "reveal that contractors have sold a product and/or service to the government, thereby 'actually revea[ling] basic commercial operations' of the contractors" are commercial information (quoting *Pub. Citizen Health Rsch. Grp. v. FDA*, 704 F.2d 1280, 1290 (D.C. Cir. 1983))). Plaintiff attempts to narrow its request to exclude any commercial information, arguing it only seeks "status updates to stale dated checks" listed in the attachments. Pl.'s Opp'n at 20–23. Even accepting Plaintiff's rewrite, status updates on particular financial transactions may still constitute commercial information. *See Citizens for Resp. & Ethics in Wash.*, 728 F. Supp. 3d at 121–22. Moreover, the court reads a FOIA request "as drafted, not as either agency officials or [the requester] might wish it was drafted." *Nat'l Sec. Couns. v. CIA*, 969 F.3d 406, 410 (D.C. Cir. 2020) (quoting *Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir. 1984)). The court will not retroactively narrow Plaintiff's FOIA request to circumvent CBP procedures. If Plaintiff seeks a narrower category of records, which may or may not require the business submitter process, it must draft its FOIA request accordingly.

With regard to the exceptions to the business submitter process under CBP's regulations, 6 C.F.R. § 5.12(b)(2), neither party identifies any law mandating disclosure, but Plaintiff argues

that the other two exceptions—that the information will not be disclosed or is already public—preclude the business submitter process. Pl.'s Opp'n at 23–26. This argument is unavailing. Plaintiff concedes that it requests some information that may fall under Exemption 4, but argues that, for those records, CBP is "compelled . . . to forgo" the business submitter process because it will withhold the records. *Id.* at 23. To the contrary, it is unclear whether CBP could justify any withholdings under Exemption 4 absent the business submitter process. Exemption 4 applies to "information [that] is '(1) commercial or financial, (2) obtained from a person, and (3) privileged or confidential.'" *Citizens for Resp. & Ethics in Wash.*, 58 F.4th at 1262 (quoting *Pub. Citizen*, 704 F.2d at 1290). Information is only confidential if the submitting party customarily and actually treats the information as private. *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 434 (2019). The key inquiry under Exemption 4 is "how the particular party customarily treats the information, not how the industry as a whole treats the information." *Ctr. for Inquiry, Inc. v. Dep't of Health and Hum. Servs.*, 723 F. Supp. 3d 47, 61 (D.D.C. 2024) (quoting *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 244 F.3d 144, 148 (D.C. Cir. 2001)). Accordingly, courts frequently rely on information from business submitters regarding their particular practices, *see, e.g.*, *Argus Leader*, 588 U.S. at 434; *Renewable Fuels Assoc. v. EPA*, 519 F. Supp. 3d 1, 10–11 (D.D.C. 2021), and have criticized agencies for failing to contact the submitting entity, *WP Co. v. U.S. Small Bus. Admin.*, No. 20-cv-1240, 2021 WL 2982173, *5 (D.D.C. July 15, 2021). Therefore, the possibility that Exemption 4 applies justifies, rather than precludes, the business submitter process.

On this record, Plaintiff's FOIA request encompasses at least some information that is not publicly available. The parties agree that some information requested by Plaintiff is public, such as the payee name, payee address, payee ID number, check number, and check amount, which

Plaintiff obtains from the Department of Treasury's public reports. Def.'s SOF Reply at 5; Leppke Decl. ¶ 7. But not all the information is publicly available. Specifically, "the fact that a replacement check was or was not requested by the business and reissued by the government is a new transaction not yet publicly available." Def.'s Reply at 14. Accordingly, CBP's regulations do not preclude the business submitter process.

      Having shown that the business submitter process was permitted, CBP has also provided a reasonable explanation for concluding its regulations mandated the process. CBP states that it had "reason to believe that disclosure of the commercial information could reasonably be expected to cause substantial competitive harm." Def.'s Mot. at 17 (quoting 6 C.F.R. § 512(b)(1)(ii)). In support, it identifies "objections from specific businesses . . . to the release of this type of information" based on potential harm. *Id.* For instance, one business submitter explained that competitors could use the information to determine the business submitter's costs. *Id.* (quoting Def.'s Ex. G, ECF No. 6-11). And CBP need not demonstrate, as Plaintiff contends, that substantial competitive harm is "likely." Pl.'s Opp'n at 22. Rather, CBP's regulations only require a "reason to believe" that disclosure "could reasonably be expected to cause substantial competitive harm." 6 C.F.R. § 512(b)(1)(ii). CBP has explained why Plaintiff's request cleared this low bar.

      Finally, the court finds that the process itself is reasonable, even though it may increase the costs of disclosure. The process "give[s] effect to Exemption 4" by allowing CBP to "consider carefully a business submitter's objections . . . prior to determining whether to disclose commercial information." Def.'s Mot. at 2–4. That CBP previously did not apply the business submitter process to Plaintiff's requests does not make its application here unreasonable. *See Nat'l Sec. Couns.*, 848 F.3d at 472 (finding reasonable policy that agency occasionally exercises

discretion to waive); *August v. FBI*, 328 F.3d 697, 702 (D.C. Cir. 2003) (refusing to order disclosure when government "changed its policy for the review of FOIA requests to ensure that all applicable exemptions are raised at the outset.") Therefore, CBP's regulations and Exemption 4's requirements provide "a reasonable, non-obstructionist explanation" for the business submitter process. *Nat'l Sec. Couns.*, 848 F.3d at 472.

    ii.    *Direct Costs of Search, Duplication, or Review*

On the record before it, the court has no reason to doubt that CBP's fee estimate seeks to recover only "direct costs of search, duplication, or review." 5 U.S.C. § 552(a)(4)(A)(iv). An agency must "provide a sufficient factual basis" for the court to determine that "the fees assessed under the [] policy do not exceed direct costs." *Nat'l Sec. Couns.*, 848 F.3d at 473. CBP's declaration clearly explains the fee estimate calculation. Howard Decl. ¶¶ 21-23. CBP assigns hourly rates to the individuals performing the work. *Id.* ¶ 21. The rate for professional time is $28/hour and managerial time is $41/hour. *Id.* Based on the 108 checks listed in Plaintiff's FOIA request and an estimated 10 minutes of managerial time per business submitter notification, the fee estimate totaled $738. *Id.* ¶ 23. During the administrative appeal, CBP concluded that it underestimated the costs by failing to include professional search time but decided to honor the estimate. Def.'s SOF Reply at 7–8. Plaintiff does not dispute the hourly rates or time estimates. Def.'s Reply 8 n.2. Consequently, CBP's fee estimate complies with FOIA's limitations, and the court will grant Defendant's motion for summary judgment.

## B. Failure to Exhaust

Plaintiff also seeks to litigate its FOIA request more broadly, arguing that CBP failed to timely conduct a search or produce records. Compl. ¶¶ 27–30; Pl.'s Opp'n at 13, 28. But Plaintiff failed to exhaust by refusing to pay the fee estimate after the request was remanded to CBP's FOIA division. Pl.'s Statement of Facts, ¶ 23, ECF No. 8-3 ("Pl.'s SOF"). "Exhaustion

does not occur until the required fees are paid or an appeal is taken from the refusal to waive fees." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 66 (1990) (citing *Nat'l Treasury Emp.'s Union v. Griffin*, 811 F.2d 644, 648 (D.C. Cir. 1987)). Once CBP remanded Plaintiff's request, after affirming the fee estimate calculation, Plaintiff had an obligation to pay the required fees before suing to challenge the substance of the FOIA request. *See Frank LLP v. CFPB*, 288 F. Supp. 3d 46, 57 (D.D.C. 2017) ("[T]he Bureau is permitted to impose reasonable fees before processing a remanded FOIA request."); *Kong On Import & Export Co. v. U.S. CPB*, No. 04-cv-02001, 2005 WL 1458279, at *2 (D.D.C. June 20, 2005). It is undisputed that Plaintiff did not pay the fee to process the FOIA request before filing this suit. Pl.'s SOF ¶ 23; Def.'s SOF Reply at 8. If a requester fails to pay the requested fees, an agency may suspend its processing of the FOIA request. *Marcusse v. U.S. Dep't of Just. Off. of Info. Pol'y*, 959 F. Supp. 2d 130, 142 (D.D.C. 2013). Therefore, CBP acted properly when it closed Plaintiff's request. *Id.*; *see also* 5 U.S.C. § 552(a)(3)(A)(ii) (Agencies must provide records pursuant to requests "made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed."). Plaintiff "remains free to pay [CBP's] fee . . . in order to get the review process rolling." *Frank LLP*, 288 F. Supp. 3d at 57 (citing *Gen. Acct. Off. v. Gen. Acct. Off. Pers. Appeals Bd.*, 698 F.2d 516, 526 (D.C. Cir. 1983)). Until it does so, Plaintiff has not exhausted its administrative remedies.

Exhaustion is not a jurisdictional bar. *Hidalgo v. FBI*, 344 F.3d 1256, 1258 (D.C. Cir. 2003). But in these circumstances, where CBP properly closed the request for failure to pay the fees and there is no record beyond the fee dispute, CBP deserves "an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision." *Id.* (quoting *Oglesby*, 920 F.2d at 61).

## IV. CONCLUSION

For the reasons stated above, the court will GRANT Defendant's Motion for Summary Judgment, ECF No. 6 and dismiss this action.

Date: March 21, 2025

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge